**NEW CASTLE COUNTY, Plaintiff,**

**v.**

**Edgar T. HARVEY et al., Defendants.**

Court of Chancery of Delaware,
New Castle.

Jan. 31, 1974.

Robert E. Daley and Joseph M. Bernstein, Wilmington, for plaintiff.

Frank J. Gentile, Jr., Wilmington, for defendants.

BROWN, Vice Chancellor.

This is an action to enjoin an alleged violation of the New Castle County Zoning Code. Trial in this Court was held on May 12, 1971 before Vice Chancellor Short and post trial briefing was ordered. Whatever the reason for the delay, briefing was not completed until May 29, 1973. By that date Vice Chancellor Short had retired. By stipulation of counsel it was agreed that I render a decision in the matter based upon a reading of the trial transcript and the briefs without the necessity of oral argument. Having done so, this is the decision of the Court.

I note initially that the testimony of certain witnesses as to dates and activities is in direct conflict and incapable of reconciliation. I am thus somewhat handicapped by not having had the benefit of hearing the manner in which the conflicting testimony was given and viewing the demeanor of the witnesses giving it. Nonetheless, the following factors appear from the record to be pertinent to the issue presented.

The parcel of land claimed to be used in violation of the Zoning Code is designated as Lot 4 in a development known as Keystone. The New Castle County Zoning Code was adopted on September 28, 1954 and at that time the lot was zoned

R–1–C. It has remained so classified up to the present. It is now being used by the Defendants to park school buses operated by the Defendant Harvey. This is a use which is not permitted under the R–1–C classification.

On the other hand, Harvey's original use of the lot goes back to 1945 or 1946. At that time he was operating a garbage collection business and used the lot to park his truck or trucks when they were not in use. He also operated a service station on another nearby lot and in connection therewith parked trucks and other vehicles on the lot in question while they were waiting to be serviced by him or, after having been serviced, while they awaited return to their owners. The lot was still being used for this purpose at the time the Zoning Code was enacted, and such use continued for a considerable period thereafter. From time to time certain commercial delivery trucks were also parked on the lot when not in use.

By his own admission Harvey did not park any school buses on the lot until 1958 and he contends that at that time he was still parking garbage trucks along with them. Other witnesses who were residents of the area contend that the school buses did not appear until the early 1960's, but in either event it is clear that school buses were not parked on the lot until long after the Zoning Code was in effect. By now it is acknowledged that the lot is no longer being used either for garbage trucks or in connection with the service station, but rather is being used primarily to park twelve to fifteen school buses.

Plaintiff concedes that if the lot were still being used to park garbage trucks or to temporarily park vehicles awaiting mechanical service, such uses would be permitted as nonconforming uses since they predated the adoption of the Zoning Code. By Article XVII, Section 1 of the Zoning Code it is provided, in pertinent part, as follows:

" . . . any land which at the time of the adoption of this Code . . . is

being put to a non-conforming use may continue to be used for the same non-conforming purpose."

Thus the issue appears to be whether the parking of school buses is a continuation of the nonconforming uses existing as of September 28, 1954, or whether it is a new and different use which is now in violation of the Zoning Code. Plaintiff contends that the nature of Defendants' business has changed (i. e., from garbage and grease to transportation) and that consequently the nature of the use has changed. Defendants argue that the use made of the lot is still the same, namely, the off-street parking of vehicles used in connection with their business.

■ While it is true that the purpose of a zoning ordinance is as much to protect an owner's right to a lawful nonconforming use as it is to protect the rights of other property owners against unlawful uses, it is generally held that the spirit of zoning ordinances is to restrict rather than to increase a nonconforming use and to secure its gradual elimination. Thus, provisions in an ordinance for the continuation of such uses should be strictly construed, and provisions for limiting nonconforming uses should be liberally construed. 101 C. J.S. Zoning § 182, p. 939; Anderson, American Law of Zoning § 6.30. Also generally stated, the basic notion of a nonconforming use precludes a change to a use which is not a continuation of the one which existed on the effective date of the ordinance. Anderson, American Law of Zoning, § 6.31. A new or substituted use, differing in quality or character, is prohibited unless the ordinance otherwise provides. 101 C.J.S. Zoning § 189, p. 946.

Such general statements, however, are difficult of application and the decisions are less than uniform. For example, it has been held that a change from the parking of 1½ ton trucks to the parking of 6 ton trucks did not constitute an unlawful change, Kramer v. Town of Montclair, 33 N.J.Super. 16, 109 A.2d 292, nor did a change from an automobile service station

to a modern drive-in station. Lane v. Bigelow, 135 N.J.L. 195, 50 A.2d 638. On the other hand, where the nonconforming use of a building was for the repair of motor vehicles used by the owner in a trucking business, it was held not a continuation of the use to thereafter use it for the repair of automobiles for pay. Town of Lexington v. Bean, 272 Mass. 547, 172 N. E. 867. And, where the owner of a lot in an apartment district was authorized to operate a row of stall garages as a nonconforming use, he was not permitted to demolish the stall garages and utilize substantially the same area for outdoor parking on the theory that the use of the premises as an outdoor parking area was essentially a continuation of the prior nonconforming use. Bowen v. Hider, Sup., 37 N.Y.S.2d 76.

In Delaware cases dealing with the subject, it was held in Minquadale Civic Association v. Kline, 42 Del.Ch. 378, 212 A.2d 811 (1965) that a nonconforming use could be intensified and expanded on the property where normal growth and expansion of the business reasonably required such intensification. However, this is not the case here since it was not the garbage or garage business that was intensified, but rather an altogether new business endeavor.

The other leading case, Auditorium, Inc. v. Board of Adjustment of Mayor & Council of Wilmington, Del.Supr., 8 Terry 373, 91 A.2d 528 (1952) is heavily relied upon by Plaintiff. There the appellant acquired the right to utilize its premises for the display of sporting events as a nonconforming use but later used the building for the sole purpose of furniture exhibitions. Years later it sought to revert to the original nonconforming use on the theory that the change had merely been from one nonconforming use to another. It was held that it could not do so since the exception authorized by the ordinance was to specific nonconforming uses and could not be extended to general use classifications. I do not feel that this case is completely controlling, however, for two reasons. First,

the language of the ordinance there is not set out and, second, the two uses are clearly distinctive and not of the same character. Here, the Defendants are still using the lot to park vehicles used in connection with their business, and the question is whether or not they can change from one business to another without losing their exception.

I feel that this question must be answered in the negative, and I take this position for the following reasons. The language of the New Castle County Zoning Code here provides that the lot "may continue to be used for the same non-conforming purpose". The "purpose" in 1954 when the Zoning Code was enacted was the temporary parking of vehicles incidental to the business activities in which Harvey was then engaged—garage repair work and garbage collection. In my opinion, the exception must be interpreted so as to guarantee that zoning will not take from an owner property rights which he already legally possessed, because to do otherwise would be confiscatory and thus, in all probability, unconstitutional. 2 Rathkopf, The Law Of Zoning And Planning 58–1. It must also be interpreted to allow normal growth and extension of that which the owner already legally possessed. Minquadale Civic Association v. Kline, supra. However, if the spirit and intent of the zoning laws is to eventually eliminate the nonconforming use as speedily as possible so as to bring the property within the overall zoning plan, then it would seem that an owner should not be permitted, after zoning, to continue an undesirable use by means of terminating his original, protected business endeavor and entering into a completely new and different enterprise in which he had no interest, stake or investment at the time the zoning took effect. To allow such would be to perpetuate a use found to be unsuitable for a given area even though the original reason for protecting it no longer existed.

In summary, while the use of the lot by the Defendants may still be the same in a

physical sense, i. e., the parking of vehicles, the "purpose" for which they are parking vehicles is different, i. e., to further a profit-making activity in which they were not engaged at the time the zoning took effect, and which is not a reasonable or related extension of that in which they were engaged at the time. I am therefore of the opinion that a permanent injunction should issue.

However, the timing of such an injunction causes concern. Plaintiff has apparently allowed this use of the property for at least some ten or eleven years before taking action. We are now in the middle of a school year and presumably contracts have been awarded which do not anticipate the cost or inconvenience of relocating a parking area for the buses. I do not feel, therefore, that an injunction should issue at once without some consideration for the effect that it might have on others not a party to the suit as well as the Defendants. Consequently, a further hearing shall be scheduled as to the form of order to be entered.