John L.K. JENNEY, Jr., Petitioner,

v.

Davis G. DURHAM, and Board of Adjustment of New Castle County, Robert McWilliams, Acting Chairperson, Clydia Issacs, Claudia Jester, Kay Lord, in their capacity as members of the Board of Adjustment of New Castle County, Respondents.

C.A. No. 96A–08–004–NAB.

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 25, 1996.
Decided: Jan. 17, 1997.

Thomas C. Marconi, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Petitioner Jenney.

Andrew P. Taylor, and R. Karl Hill, of Cooch & Taylor, Wilmington, for Respondent Davis Durham.

Michael T. Mitchell, of the New Castle County Law Department for Respondent New Castle County Board of Adjustment.

## OPINION

BARRON, Judge.

### INTRODUCTION

In April 1996, Davis G. Durham ("Durham" or "Respondent") filed an application with the Board of Adjustment for New Castle County ("Board") for a variance from the New Castle County Steep Slope Ordinance ("the Steep Slope Ordinance" or "the Ordinance").[1] After a public hearing, the Board granted the variance, over the objections of John Jenney, Jr. ("Petitioner" or "Jenney"), a neighbor. Jenney filed a timely petition for writ of *certiorari* with this Court. Having reviewed the parties' submissions as well as the record below, the Court concludes that the Board's decision must be Reversed.

### FACTS

On April 1, 1996, Durham filed an application with the Board for a variance to build two homes for his sons on a five-acre portion of the ten-acre parcel of land known as 901 Mt. Lebanon Road, located in New Castle County, Delaware. Durham could not proceed to build without the variance because the proposed construction sites are located in an erosion-prone, steep slope district protected by the Steep Slope Ordinance, Code Sections 40–301 through 40–309.

The Board held a public hearing on the application on July 11, 1996, at which time the chairman noted that Durham's was the first variance application the Board had considered under the Steep Slope Ordinance, which was enacted in 1990. Testifying on behalf of the respondent were Durham; his son, Andrew Durham; James R. Nelson, a registered architect; and Herbert Blackwelder, New Castle County Department of Planning. Jenney, a neighbor, appeared and testified in opposition to the variance.

The evidence showed that there are currently two structures on the parcel (Durham's residence and a small cabin) and that he desires to build two additional houses for his sons. Durham acknowledged that both proposed homes would be located on a pro-

---

1. A copy of the Steep Slope Ordinance in its    entirety is attached to this opinion.

hibitive steep slope district and that at least one home could be built on a level portion outside the prohibitive district. The angle of the slope is between 25 and 30 percent in most areas, with certain areas somewhat steeper.[2]

As part of the proposed arrangement, Durham offered to convey a conservation easement to the County to protect the public view of his property from the Brandywine Creek State Park, which abuts his land. The proposed easement would include level land which could accommodate at least one house without violating the steep slope ordinance; conveying the land to the County would in turn force Durham to build on the prohibitive steep slope area. When questioned by a Board member, Durham acknowledged that he would withdraw his offer of the easement if the Board approved the construction of only one structure.

Durham testified that he had contacted his neighbors to obtain their approval, as well as state officials and conservation groups. He explained the procedures to be used to minimize erosion and earth movement and submitted a written plan outlining those procedures. James Nelson, a registered Delaware architect, further explained these proposals.

Herbert Blackwelder, New Castle County Department of Planning, testified as to the County's concerns as well as Durham's "sensitivity" to the environmental issues. He confirmed that Durham had submitted the documentation required under Sec. 40–307 and that the construction plans were in compliance with Sec. 40–306. He did not address the question of whether the proposed use (that is, residences) was permitted or otherwise allowed under Sec. 40–305, which provides a limited list of permitted and conditional uses in a steep slope district.

John Jenney, the Petitioner, opposed the granting of the variance. Jenney lives across the Brandywine River from Durham on a parcel of land set back from the River. He testified that he objects to the impact of the proposed construction on his view and asked the Board to uphold the Ordinance.

Prior to the hearing, the Board referred Durham's application to the New Castle County Department of Planning ("Department" or "Department of Planning") for evaluation and a written recommendation to be entered into the record, as required in Sec. 40–308. The Department's Memorandum states at the outset that "[d]evelopment of single-family homes is not permitted by right or by conditional use in the prohibitive slope district." Department of Planning Memorandum, May 17, 1996, at 1. (Hereinafter "Mem. at *page number*"). In its conclusion the Department stated that

> there is sufficient public benefit from the preservation of the view **to warrant the construction of one dwelling which would have been allowed by right on the preserved site.** Any additional construction would seem to lack an offsetting public benefit.

Mem. at 3 (emphasis added). The emphasized portion of the conclusion clearly approves construction of only one structure which was "allowed by right," that is, outside the perimeters of the steep slope district. Neither of Durham's proposed structures fell outside the steep slope district.

However, the recommendation section of the Department's Memorandum is worded differently, leaving out altogether the significant phrase "allowed as of right":

> The Department recommends approval of the application on the condition that only one dwelling be constructed and that approval be conditioned on recordation of the conservation easement.

Mem. at 3. The recommendation also presents four conditions for approval, all of which

---

2. The Ordinance classifies steep slopes as either prohibitive (greater than 25 percent slope) or precautionary (15 to 25 percent slope). Sec. 40–301(c). Slope is calculated by dividing the vertical elevation by the horizontal distance over which the vertical change occurs. Sec. 40–301(b). For both prohibitive slopes and precautionary slopes, the Ordinance strictly limits permitted principal uses (those allowed as of right) and conditional uses. Sec. 40–305. Both permitted and conditional uses are subject to the standards and criteria presented in Sec. 40–306. Durham proposed building two homes in a prohibitive steep slope district, not a precautionary district.

pertain to environmental controls specific to steep slope conservation.

In summary, the Department's analysis proceeds as follows: residential homes may not be built by right or by conditional use on steep slope land; Durham's offer of a conservation easement warrants the construction of one building allowed as of right (not the buildings proposed by Durham); the construction of one building is recommended conditioned upon compliance with controls designed to preserve the steep slope ecology. The Board did not attempt to clarify the contradiction inherent in this rationale. At the hearing, Blackwelder explained the Department's position as follows:

> In this particular case, **Mr. Durham could by right construct a home on the precautionary slope there.** He would need to obtain a conditional use application for it but we confidently believe that he would be able to effectively show that he could do that. So by right, he could subdivide the property and get at least one lot for the construction of a house.
>
> The **overriding public benefit was that he was proposing to protect his valuable view shed by shifting the house into an area where the only way he could construct the house was with the variance.** And we thought that there was some offsetting public benefit that should warrant consideration of the first house. We don't find that that public benefit extends to the construction of a second home.

Transcript of Hearing, July 11, 1996, at 20 (emphasis added). (Hereinafter "Tr. at *page number*"). In other words, Durham could by right build one house in the precautionary slope district if he obtained a conditional use application; however, the Department was willing to recommend approval for one house on the prohibitive slope because of the public benefit derived from the proposed easement.

In its decision dated July 11, 1996, the Board granted the variance for two houses to be built in the prohibitive steep slope district. After summarizing the testimony, the Board concluded that

> the applicant is suffering exceptional practical difficulty so as to justify the relief requested. The requested dimensional change is minimal, and the harm to the applicant if the variance is denied would be greater than the probable effect on neighboring properties if it is granted. Therefore, the Board takes action to *grant* this application for two dwellings....

Board Decision, July 11, 1996, at 3 (emphasis in the original). (Hereinafter referred to as "Bd. at *page number*"). The Board also adopted the conditions promulgated by the Department of Planning and added its own condition that the easement be granted in perpetuity.

On August 16, 1996, the Petitioner filed an appeal on certiorari to this Court. Briefs were filed by both Jenney and Durham. The Board waived its right to file a brief, relying instead on the arguments presented by Durham.

## ISSUES

The Petitioner's arguments all pertain to the question of which legal standard governs a request for a variance from the Steep Slope Ordinance. This is an issue of first impression. The Petitioner argues first that the Board committed reversible error when it applied the exceptional practical difficulty test to Durham's application and found that Durham met this standard. Second, Petitioner argues that the unnecessary hardship test is the proper standard for Durham's application and that Durham has not met this standard. Third, Petitioner argues that the Board misapplied the requirements of the Steep Slope Ordinance and that Durham has not met those requirements.

## SCOPE OF REVIEW

■ In reviewing a petition for a writ of *certiorari* from a decision of the Board of Adjustment, this Court is limited to correction of errors of law and to determining whether or not substantial evidence exists on the record to support the Board's findings of fact and conclusions of law. *Janaman v. New Castle County*, Del.Super., 364 A.2d 1241, 1242 (1976), *aff'd* Del.Supr., 379 A.2d 1118 (1977). *See also Mellow v. Bd. of Adjustment of New Castle County*, Del.Super., 565 A.2d 947, 954 (1988), *aff'd* Del.Supr. 567

A.2d 422 (1989) ("Review by certiorari traditionally has been limited to errors which appear on the face of the record"). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion." *Oceanport Ind. v. Wilmington Stevedores,* Del.Supr., 636 A.2d 892, 899 (1994).

■ In order for this Court to perform its appellate function, the Board must particularize its findings of fact and conclusions of law. *Kwik–Check Realty Co., Inc. v. Bd. of Adjustment of New Castle County,* Del.Super., 369 A.2d 694, 699 (1977), *aff'd,* 389 A.2d 1289 (1978).

## DISCUSSION

### 1. The Legal Standard for a Variance from the Steep Slope Ordinance

The Petitioner argues that Durham's request to build homes in the steep slope district is in fact a request for a use variance requiring the Board to apply the unnecessary hardship standard rather than the exceptional practical difficulty standard. In response, Durham argues that he did not apply for a use or area variance and that neither the unnecessary hardship standard nor the exceptional practical difficulty standard governs his application. He contends that he sought a variance from the Steep Slope Ordinance, which has separate standards taking it outside the jurisdictional reach of 9 *Del.C.* § 1352(a)(3).

The Board of Adjustment is an administrative body created by the General Assembly and endowed with limited jurisdiction. 9 *Del.C.* §§ 1350, 1352. The legislature has defined highly specific conditions under which the Board may grant a variance for a zoning provision:

In specific cases, such variance from the provisions of any zoning ordinance, code or regulation that will not be contrary to the public interest, where, owing to special circumstances or exceptional situation, a literal interpretation of the provisions of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordi-

nance, code, or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map.

■ In interpreting this statute, Delaware courts have distinguished between the two types of variances, the "use" variance and the "area" variance, and the different standards to be applied to them. *Pirestani v. Bd. of Adjustment of New Castle County,* Del.Super., C.A. No. 92A–04–10, Barron, J. (August 14, 1992) (ORDER). A use variance "changes the character of the zoned district by permitting an otherwise proscribed use," whereas an area variance concerns only the practical difficulty in using the particular property for a permitted use. *Bd. of Adjustment v. Kwik-Check Realty,* Del.Supr., 389 A.2d 1289, 1291 (1978). The unnecessary hardship standard is the proper standard to assess a use variance, while the lesser standard of the owner's exceptional practical difficulties is appropriate for an area variance. *Id.* It is necessary to correctly identify the type of variance sought in order to ensure that the right standard is applied to the application.

The purposes, definitions and requirements of the Steep Slope Ordinance are consistently defined in terms of land use. For example, in establishing the steep slope district, the Ordinance provides that

[t]he steep slope district shall be deemed an overlay zone that imposes a set of requirements in addition to those of the underlying zoning district. **Land may be used** only under the conditions and requirements of both zones.

Sec. 40–301 (emphasis added). One of the public purposes of the Ordinance is to "[e]ncourage **the use of steep slopes for open space** and other uses which are compatible with the preservation of natural resources and protection of areas of environmental concern." Sec. 40–302(3) (emphasis added). The Ordinance provides that "[a]ny proposed construction or land disturbance activity on land within the steep slop district **shall be in**

**compliance with the uses** permitted in section 40–305." Sec. 40–304 (emphasis added). A narrow range of permitted uses is presented is Sec. 40–305, which states categorically that **"any use not specifically permitted by this section is prohibited."** (Emphasis added).

The permitted and conditional uses in prohibitive areas include agricultural uses; conservation and recreation uses; structures existing prior to the effective date of the ordinance; yards; utilities, easements, rights-of-way, and accompanying accessory uses; roads and driveways when no viable alternative exists. Sec. 40–305(1)(a) & (b). As found by the Department, development of single-family homes is not permitted by right or by conditional use in the prohibitive steep slope district.

■ Based on the clear language of the Ordinance, the Court finds that the Ordinance restricts the allowable uses for this type of land, and that Durham's application to build two homes is for a use variance, as he seeks approval of "an otherwise proscribed use." *Kwik–Check*, 389 A.2d at 1291. The proper standard to be used in assessing a use variance is the exceptional hardship test, and the Court holds that the unnecessary hardship test is the proper legal standard to be applied to applications for variances from the provisions of the Steep Slope

Ordinance. Thus, the Court concludes as a matter of law that the Board committed reversible error when it applied the exceptional practical difficulty standard to Durham's application.[3]

■ This conclusion also puts to rest Durham's contention that he did not seek a variance but merely posed a "special question" governed by 9 *Del.C.* § 1352(a)(2). Durham argues, without benefit of authority, that because the Ordinance has its own requirements, an application for a variance from those requirements constitutes a "special question," thereby negating the need to comply with § 1352(a)(3). Under § 1352(a)(2), the Board is empowered to decide "special exceptions or special permits or other special questions," such as the granting of temporary permits or temporary variances. *White v. Bd. of Adjustment of New Castle County*, Del.Super., C.A. No. 88A–NO–7–1–AP, Stiftel, P.J., 1989 WL 70826 (Jun. 15, 1989) (ORDER). Because Durham applied for a use variance, his application falls within the jurisdictional parameters of § 1352(a)(3), which are not superseded by any provisions of the New Castle County Code. Until Durham has met the jurisdictional prerequisites of § 1352(a)(3), compliance with the Ordinance's requirements is simply not relevant.[4]

3. The Court also notes that the Board made conclusory findings but did not "particularize its findings of fact and conclusions of law." *Kwik–Check Realty Co., Inc. v. Bd. of Adjustment of New Castle County*, 369 A.2d at 699. It is therefore impossible even to surmise how the Board decided to apply the exceptional practical difficulty standard to Durham's application.

4. Having found that the Board erred as a matter of law in applying the exceptional practical difficulty test to Durham's application for a use variance, the Court does not base its decision on the Board's use or misuse of the provisions of the Steep Slope Ordinance. However, in light of the apparent confusion about the reach of the Board's jurisdiction vis-a-vis county ordinances, the following observations are in order. As a threshold matter, 9 *Del. C.* § 1352 is the enabling statute which confers subject matter jurisdiction upon the Board and grants the Board its authority to act. *See, e.g., Figgs v. Bellevue Holding Co.*, Del.Super., 652 A.2d 1084, 1088 (1994); *Mayor and Council of New Castle v. Rollins Outdoor Advertising, Inc.*, Del.Super., 475 A.2d 355, 358 (1984). The Board has no jurisdiction to act

outside the parameters of § 1352, and a New Castle County ordinance (such as the Steep Slope Ordinance) does not supersede, side-step or otherwise substitute for the legislative jurisdictional prerequisites. Thus an individual seeking a variance from the Steep Slope Ordinance must meet the "heavy burden of showing unnecessary hardship" before the Board can grant the application. *Baker v. Connell*, Del.Supr., 488 A.2d 1303, 1307 (1985).

The requirements of the Ordinance become relevant to the Board's evaluation only after the Board is satisfied that the applicant has met the statutory unnecessary hardship standard. Only then is it possible for an applicant to qualify for a variance from the list of permitted uses for steep slope land that are delineated in Sec. 40–305. The standards for use which are set forth in Sec. 40–306 are the "[s]tandards applicable to **all uses**," (emphasis added) and do not provide an alternative route to approval of a nonconforming use, as Durham argues. They are basic environmental guidelines which must be followed for any construction in a steep slope district. Compliance with them is not relevant to the Board's

## 2. The Unnecessary Hardship Test

An applicant for a use variance bears a "heavy burden of showing unnecessary hardship, since it is recognized that a prohibited use, if permitted, would result in a use of the land in a manner inconsistent with the basic character of the zone." *Baker v. Connell,* 488 A.2d at 1307. In the case at bar, the "basic character" of the land in question is a "unique natural environment not found in many areas of the County." Mem. at 2. The Board's paramount consideration in evaluating variance applications is the public interest, *Baker v. Connell,* 488 A.2d at 1307, which in the case at bar is to "protect the environment through the preservation of natural resources and to complement the [Code] section relating to open space." Sec. 40–302. These are the general principles which prevail when applying the specific requirements of the unnecessary hardship test. *Id.*

The unnecessary hardship standard requires the applicant to show that (1) the property cannot yield a reasonable return when used only for a permitted use; (2) the plight of the owner is due to unique circumstances; and (3) the use requested by the variance will not alter the essential character of the locality. *Baker v. Connell,* 488 A.2d at 1307, *citing 8 McQuillen,* Municipal Corporations § 25.160 (3d ed.1983); *Homan v. Lynch,* Del.Supr., 147 A.2d 650, 654 (1959). Furthermore, "[i]t is also a jurisdictional prerequisite that the applicant show in terms of monetary proof that all uses permitted on the land under existing zoning are economically infeasible." *Baker v. Connell,* 488 A.2d at 1307.

As to the first prong and the jurisdictional prerequisite, there is no evidence of record that Durham's property cannot yield a reasonable return if the steep slope district remains in its natural state. Durham argues that without the variance he can get no return on his property, let alone a reasonable

return. This argument is flawed for at least two reasons. First, the record shows that Durham's property now contains two structures, his residence and a cabin. In addition, Durham testified as to the results of an appraisal of his property: "This has been appraised, this building site here, as roughly $300,000 and these two lots here, these two options that we are proposing here have also been appraised and these two did not add up to the single one here." Tr. at 21. The referenced building site is the one located in the easement which Durham proposed conveying to the County. Thus, Durham cannot argue that without the variance his land would not give him a reasonable return. Second, without the variance to build on the prohibitive district, it is uncontroverted that Durham could build outside the prohibitive district if he did not convey the easement to the County. In other words, by proposing to convey level land to the County, Durham has created a situation where he needs a variance to build.[5] Based on these facts, the Court finds that Durham does not meet the first prong of the test.

The second prong of the test requires the applicant to show that his plight is due to unique circumstances. In fact, as discussed above, Durham's plight is due to the fact that he has offered to deed level land to the County. Otherwise, he could build at least one home without seeking a variance and one in several other possible locations on the property, such as closer to Mt. Lebanon Road or on a precautionary slope with a conditional use application.

The third prong requires a showing that the use will not alter the essential character of the locality. As shown in the preceding section on the nature of the Ordinance versus the residential construction Durham desires, the proposed construction is in conflict both with the spirit of the Ordinance and with its explicit terms. The Court concludes that Durham did not and cannot meet the third prong.

---

threshold determination of the applicant's ability to meet the appropriate standard for a use variance.

**5.** The Board's decision acknowledges this fact: "Because of the easement, the only area on the

site where the dwellings can be built is in a prohibitive slope district.... Applicant views the imposing of a conservation easement as his exceptional practical difficulty." Bd. at 2.

As a matter of law, this Court is satisfied that there is not substantial evidence in the record to support a finding that Durham met his burden of showing unnecessary hardship.

### 3. Requirements of the Steep Slope Ordinance

Having found that the Board applied the wrong legal standard to Durham's application for a use variance, the Court need not reach the parties' arguments regarding the Ordinance. However, the Court has provided skeletal guidelines to construction of the Ordinance, *infra,* n. 3.

### CONCLUSION

The Board has the discretion to adjust the impact of zoning codes if certain criteria are met. *Janaman,* 364 A.2d at 1242–43. In other words, the Board's statutory discretion to grant or deny a variance request is not without limits. *Id.* In the case at bar, the Court concludes that the Board abused its discretion when it applied the wrong legal standard to Durham's application for a use variance from the Steep Slope Ordinance and when it granted the application in exchange for a conservation easement.

For all the foregoing reasons, the decision of the Board of Adjustment granting Durham's application is hereby *Reversed.*

*It Is So ORDERED.*

ATTACHMENT

of the county, where such slope exists in any continuous horizontal increment of 50 feet or more.

(2) *Precautionary slope.* Precautionary slopes are those of 15 to 25 percent slope as based on a site survey or on the United States Geological Survey topographic maps of the county, where such slope exists in any continuous horizontal increment of 50 feet or more.

The definitions in this subsection are not intended to include manmade steep slopes, provided any disturbance to any manmade slopes in excess of 15 percent is done in accordance with current county grading regulations.

(d) *Boundary determination review.* Any application proposing a construction or land disturbance activity within the steep slope district, as provided in section 40-305, shall be submitted in accordance with section 40-307. Any area of the steep slope district that falls within the subject lot shall be interpolated and shown on the site plan required under subsection 40-307(a)(6) through shading of such area(s). Areas shown as less than 15 percent slope may be based on U.S. Geological Survey information. Any area shown as 15 percent or greater slope shall be delineated on the basis of an actual field survey of the topography of the site. The site plan shall contain a certification by the registered professional engineer or land surveyor having prepared the plan as to the accuracy of the slopes as depicted on the plan. (Code 1983, § 23-115)

## DIVISION 3. STEEP SLOPE

### Sec. 40-301. Establishment of district.

(a) *Overlay zone.* The steep slope district shall be deemed an overlay zone that imposes a set of requirements in addition to those of the underlying zoning district. Land may be used only under the conditions and requirements of both zones.

(b) *Slope calculation.* The term "slope" is defined as the vertical change in elevation divided by the horizontal distance over which that vertical change occurs. For example, a 20-foot change in elevation over 100 horizontal feet is a 20-percent slope.

(c) *Boundary determination.* The steep slope district consist of two areas which are delineated and defined as follows:

(1) *Prohibitive slope.* Prohibitive slopes are those of greater than 25 percent slope as based on a site survey or on the United States Geological Survey topographic maps

### Sec. 40-302. Public purposes.

The public purpose of this division is to protect the public health, safety and welfare. To this end, this division is intended to protect the environment through the preservation of natural resources and to complement the sections relating to open space. The sections of this division are designed to encourage the sensitive treatment of hillsides and their related soil and vegetation resources in an effort to minimize adverse environmental impacts. The following objectives serve to complement these specific purposes and the overall

purposes of this division, and the objectives shall be to:

(1) Conserve and protect steep slopes from inappropriate development, such as excessive grading, land form alteration and extensive vegetation removal.

(2) Avoid potential hazards to property and the disruption of ecological balance which may be caused by increased runoff, flooding, soil erosion and sedimentation, blasting and ripping of rock and landslide and soil failure.

(3) Encourage the use of steep slopes for open space and other uses which are compatible with the preservation of natural resources and protection of areas of environmental concern.

(4) Avoid public expenses of repair and restoration of damage to downhill sites caused by the improper development of steep slopes.

(Code 1983, § 23-116)

### Sec. 40-303. Applicability; exemptions; compliance; violations.

(a) *Applicability.* This division shall apply to all lands within the jurisdiction of the county and shown as being located within the boundaries of any identified steep slope district, as defined in subsection 40-301(c).

(b) *Exemptions.* The development of lots within major subdivisions or land development plans that have been recorded or have received preliminary approval and lots within minor subdivisions or land development plans that have been recorded, whether or not building permits have been issued, shall be exempt from this division. Subsequent revisions to such plans shall also be exempt, provided the revisions do not serve to make the development proposed by the plan nonconforming with this division or increase the degree of nonconformity.

(c) *Compliance.* Except as provided in subsections (a) and (b) of this section, no area within the steep slope district shall be used or developed and no structure shall be located, extended or structurally altered without full compliance with the terms of this division, the drainage code in chapter 12 of this Code and other applicable regulations.

(d) *Penalty for violation.* Any person who shall violate any section of this division shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to punishment as provided in section 1-9 of this Code and shall be required to restore the gradient and functional stability of the original slope, including monitoring until appropriate plant cover has anchored the soil.

(Code 1983, § 23-117)

### Sec. 40-304. Application review and approval.

Any proposed construction or land disturbance activity on land within the steep slope district shall be in compliance with the uses permitted in section 40-305. Any such proposal shall be reviewed by the department of planning for compliance with all requirements of this division, the drainage code and all other applicable codes and ordinances of the county. Approval of the application by the department of planning shall be prerequisite to approval of any subdivision or land development application by the department planning and/or approval of any building permit application by the division of development and licensing.

(Code 1983, § 23-118)

### Sec. 40-305. Permitted uses.

Whenever the underlying zoning district permits the following uses, such uses may be permitted in the steep slope district; any use not specifically permitted by this section is prohibited:

(1) *Areas of prohibitive slope (greater than 25 percent).*

    a. *Permitted principal uses.* The following are the only uses permitted as of right, provided they are also in compliance with the base zoning district and all other sections of this division, including subsection 40-306(a).

        1. Agricultural uses.

2. Conservation and recreation uses not requiring structures.
3. Structures existing prior to the effective date of the ordinance from which this division derives.
4. Front, rear and side yards of any lot or tract, provided alteration of the terrain and vegetation does not increase the potential erodibility of the site.

b. *Conditional uses.* Any of the following uses shall be permitted as a conditional use, subject to the requirements of subsections 40-306(a) and (b) of this division:

1. Conservation and recreation uses requiring structures.
2. Proposed utilities, easements and rights-of-way.
3. Accessory uses customarily incidental to any of such.
4. Accessory structures to any uses permitted in subsection (1)a of this section.
5. Roads and driveways only when no viable alternative alignment or location is feasible provided that such roads and driveways are aligned predominantly parallel to the contours.

(2) *Areas of precautionary slope (15 to 25 percent).*

a. *Permitted principal uses.* The following are the only uses permitted as of right, provided they also are in compliance with the base zoning district and all sections of this division, including subsection 40-306(a): Any principal uses permitted in subsection (1)a of this section.

b. *Conditional uses.* Any of the following uses shall be permitted as a conditional use subject to the requirements of subsection 40-306(a) and (b):

1. Any conditional uses identified in subsection (1)b of this section.
2. Any structure or use permitted by right, special exception or condi-tional use according to the terms of the underlying base zoning district.
3. Extractive uses, including borrow pits, where approved by all regulatory agencies.

c. On any lot containing an area or areas of precautionary slope, the total amount of impervious surface that may be installed or maintained within the total area of precautionary slope shall not exceed 50 percent of the maximum amount of impervious surface permitted for such use on that same area of the lot in the underlying base zoning district.

(Code 1983, § 23-119)

### Sec. 40-306. Standards and criteria for review.

(a) *Standards applicable to all uses.* Standards applicable to all uses in the steep slope district shall be as follows:

(1) All grading shall be minimized, and no grading shall be undertaken within any area of the steep slope district except where approved in conjunction with a use permitted under the terms of this division.

(2) Finished slopes of all cuts and fills shall comply with the maximum gradient standards of the drainage code in chapter 12 of this Code.

(b) *Additional criteria for review of conditional uses.* Additional criteria for review of conditional uses shall be as follows:

(1) In evaluating any application for approval of an activity within the steep slope district, the department of planning shall determine the appropriateness of the proposal with the following:

a. The degree of modification proposed within the steep slope district to the topographic, soil and vegetation resources and the techniques proposed to mitigate potential adverse environmental impacts.

b. The effect the development of the steep slope district would have on adjacent properties.

c. The compatibility of the proposed uses with the public purposes described in section 40-302.

(2) In connection with any application for a conditional use, the applicant shall provide evidence that the use or structure complies with the following:

a. The steep slope district is being proposed for development or land disturbance because no other alternative location within the subdivision being considered is feasible or practical.

b. Earth-moving activities and vegetation removal will be conducted only to the extent necessary to accommodate proposed uses and in a manner that will not cause excessive surface water runoff, erosion, sedimentation or unstable soil conditions.

c. Mitigation techniques will be utilized, including but not limited to retaining walls, tree wells, the establishment of ground covers and/or low spreading shrubs, the use of erosion control fabric and the like. Such techniques shall be evidenced through the submission of plans and construction details which depict, delineate and otherwise describe the land development proposal.

d. The proposed buildings or structures shall be of sound engineering design. Footings shall be designed in response to the site's slope, soil and bedrock characteristics. Such designs shall be evidenced through the submission of plans or construction details which depict, delineate and otherwise describe the land development proposal.

e. Disturbance to particularly sensitive features of the site shall be minimized; special emphasis in planning for the site shall be given to the protection of:

1. Soils with seasonal high water table, as listed in appendix I, table C of chapter 12 of this Code pertaining to drainage.

2. Underlying geology which comprises or contributes to a major groundwater resource including the flow of existing springs.

f. Disturbance shall be minimized where the length of area of steep slope, both on the site and on adjacent lands within 200 feet of the site, is extensive.

g. The proposed development, any impervious ground cover and the resultant disturbance to the land and existing vegetative cover will not cause runoff and/or related environmental problems off the site.

h. Removal of or disturbance to existing vegetation on the site shall be minimized. The proposed impacts on existing vegetation shall be evaluated in terms of the potentially detrimental effects on slope stability, recharge of stormwater and existing drainage patterns.

i. Road construction shall follow the natural topography, with cuts and grading minimized; the location of any proposed point of access to an activity or use on the lot shall reflect the need to avoid steep slope disturbances.

(Code 1983, § 23-120)

Sec. 40-307. Application procedures.

(a) *Information to be submitted.* Application for approval of any activity within the steep slope district that is permitted under the terms of section 40-305 shall be made in writing to the department of planning. Such application shall include the submission of the following materials and information:

(1) Name and address of applicant.

(2) Name and address of owner of land on which proposed activity is to occur.

(3) Listing of other permits required.

(4) A statement, signed by the owner at the time of subdivision, land development or building permit application that there is a full understanding of the potential difficulties stemming from steep slopes.

(5) A statement and/or structural design, where applicable, signed and sealed by a registered architect or professional engineer, explaining the building methods to be used in overcoming foundation and other structural problems created by slope conditions. A statement, where applicable, signed and sealed by a professional engineer or land surveyor, explaining the methods to be used to preserve the natural watershed and to prevent soil erosion and excessive surface water runoff to neighboring properties and/or streets.

(6) Plans drawn to scale of at least one inch equals 50 feet, sealed by a registered professional engineer or land surveyor and depicting the following:

a. The location, dimensions and elevations of the property.

b. Existing and proposed contours. Contour lines shall be at two-foot intervals where the existing slope is less than 15 percent and at five-foot intervals where the existing slope is 15 percent or greater.

c. The location and boundaries of precautionary slope and prohibited slope areas shall be shaded and clearly identified.

d. Existing and proposed uses and development including all existing and proposed structures, other impervious surfaces, storm drainage facilities and retaining walls, provided that, unless otherwise required by the department of planning, conceptual plans will satisfy this requirement and general building footprints may be indicated rather than specific foundation plans.

e. The location and identification of vegetation and ground cover characteristics of that portion of the property within the prohibitive and precautionary slope areas as well as proposed landscaping material to be installed.

f. Plan, profile and typical cross sections of any proposed driveway.

(b) *Period for review.* The department of planning, upon receipt of all the materials and information required in subsection (a) of this section, shall render a decision within 45 days. The department will evaluate the application using the standards and criteria of section 40-306 of this division and may also seek the advice and comment of other agencies, including but not limited to the department of public works, the county soil conservation service and the Water Resources Agency.

(Code 1983, § 23-121)

### Sec. 40-308. Board of adjustment.

The board of adjustment shall, prior to scheduling a public hearing, refer every application seeking a variance from this division to the department of planning which shall in turn provide the board with a written recommendation within 30 days of the receipt of the request. The department of planning will evaluate the variance application using the standards and criteria of section 40-306 of this division and may also seek the advice and opinion of other agencies, including but not limited to the department of public works, the county soil conservation service and the water resources agency. The board of adjustment, upon receipt of the recommendation from the department of planning, shall schedule a public hearing on the variance application and shall enter the department of planning's recommendation into the record. In addition to the department of planning's recommendation, the board of adjustment shall also evaluate the variance application using the standards and criteria in section 40-306.

(Code 1983, § 23-122)

### Sec. 40-309. Burden of proof.

In all applications for approval under this division, including application for any variance from this division, the burden of proof shall be on the applicant to show that the use required will be in conformity with the objectives of this division, that proper safeguards will be observed, and that the use will not be injurious to the public health, safety and general welfare.

(Code 1983, § 23-123)

### Secs. 40-310—40-335. Reserved.