WAWA, INC., Appellant

v.

NEW CASTLE COUNTY BOARD
OF ADJUSTMENT, Appellee.

Civil Action No. 04A–05–005–JOH.

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 5, 2004.

Decided: Jan. 10, 2005.

Richard D. Kirk of The Bayard Firm, of Wilmington, DE, for appellant.

Brian J. Merritt of the New Castle County Law Department, of New Castle, DE, for appellee.

## OPINION

HERLIHY, Judge.

Wawa, Inc., has sought approval from New Castle County to convert its current convenience store at Tybouts Corner to a larger store and one which would also sell gasoline. To accomplish this change, it sought a variance from the New Castle County Board of Adjustment.

The Board denied Wawa's application. In doing so, it employed the standard pertinent to use variance requests, namely, that the applicant must show "unnecessary hardship." Wawa's current store is a proper use for the zone in which it is located and the surface commercial zone would permit such a use. But the lot on which it sits is on or closely proximate to important water resources. As a result, current New Castle County ordinances relating to subsurface conditions prohibit the construction of new gasoline pumping and underground storage tanks any such area. A variance would, therefore, be needed.

The "unnecessary hardship" standard employed to test "use" variances is triggered when the proposed use is for a purpose contrary to zoning laws or regulations. While Wawa's current store is a proper use, the dispensing of petroleum products and the adjunct storage needed to do so otherwise would block Wawa's proposed use. It, however, points to the existence of two gasoline stations in current operation on other corners of the same Tybouts Corner intersection where its proposed gasoline station would be located. That fact, however, does not trigger the less stringent test for an area variance, which is a variance not proposing a usage otherwise prohibited. Those service stations are non-confirming uses.

The Board indicated its decision was the first one raising the issue of an above ground permitted use with a prohibition based on sub-surface circumstances prohibiting such use. The Court notes the issue as one novel to Delaware law.

It concludes, nevertheless, that the Board applied the appropriate standard by judging Wawa's application as one for a use variance. Its decision denying the application is supported by substantial evidence and is free of legal error. Its decision is **AFFIRMED.**

### Procedural History

Wawa, following the bureaucratic maze, first filed an application with the New Castle County Department of Land Use for approval of a minor land development

plan[1] seeking permission to renovate its current convenience store with a larger store with gasoline pumping facilities. In its letter of June 19, 2002, to Wawa, the Department denied the application stating the proposal was in substantial non-compliance with the New Castle County Unified Development Code (UDC). Wawa was instructed to address stated issues and submit a revised Exploratory Plan Application.

As required by UDC § 40.10.385,[2] Wawa presented its revised application to the Resource Protection Area Technical Advisory Committee (RPATAC). On April 16, 2003, after reviewing the environmental impact assessment report and supplemental information and testimony, RPATAC recommended that the Board deny the variance. Wawa's proposed gasoline station is located in what is classified as a Water Resource Protection Area (WRPA).[3] The UDC prohibits from such areas the type of facility Wawa proposed. RPATAC voted against a recommendation that it approve Wawa's application.

Wawa then applied for a public hearing before the Board of Adjustment on a vari-

---

1. Minor land development. A plan, not involving a new street, that proposes one (1) or more of the following:

 B. Except for single-family dwellings and accessory structures on fee simple lots, land development proposing new buildings or additions one thousand (1,000) square feet GFA or greater and meeting one (1) or more of the following criteria:

 1. Proposed buildings less than twenty thousand (20,000) square feet GFA.

 (Amended September 22, 1998 by Ordinance 98–062)

 UDC § 40.33.300 General Definitions.

2. RPATAC REVIEW

 Neither the Board of Adjustment, nor the Planning Board shall consider any application for a variance from this Article until the RPATAC has had an opportunity to review the application and make a written recommendation to the respective board. Any application for a variance from this Article shall be transmitted tot eh RPATAC, which shall have forty-five (45) days from the filing of the application to review and issue its recommendation.

 (Amended December 14, 1999 by Ordinance 99–075; amended July 13, 2004 by Ordinance 04–059).

 UDC § 40.10.385.

3. WATER RESOURCES PROTECTION AREA

 A. Water resource protection areas are in Cockeysville Formation, Cockeysville Formation Drainage Area, wellheads, and recharge areas. All such areas are as depicted on the three (3) map series "Water Resource Protection Areas for the City of Newark, City of Wilmington, New Castle County, Delaware,"

prepared by the Water Resources Agency for New Castle County that is dated 1993, or as amended. These areas shall be protected as required by the following sections to protect the County's water resources from contamination and pollution and to insure adequate water quantity for future needs.

 B. No development shall be permitted to have more than twenty (20) percent impervious surface ratio unless an environmental impact assessment report certified by a State-registered professional geologist or professional engineer with a background in hydrogeology indicated that additional development would not endanger the public or the environment. All environmental impact assessment reports performed pursuant to this Section shall be reviewed in accordance with Section 40.10.385 and the procedures set forth in Article 30 and Article 31 for environmental impact assessment reports. The impervious surface ration and open space ration operate independently and are based on the base site area.

 C. The Department may permit the redevelopment of existing nonconforming sites within Water Resource Protection Areas, which exceed the twenty (20) percent impervious cover standard, provided the proposed redevelopment of the site will reduce the existing impervious cover by a minimum of five (5) percent for sites of two (2) acres or less, a minimum of ten (10) percent for sites greater than two (2) acres and less than five (5) acres, and a minimum of twenty (20) percent for sites greater than five (5) acres and larger.

 (Amended September 22, 1998 by Ordinance 98–080; amended December 14, 1999 by Ordinance 99–075)

ance to a store and dispense fuel at its Tybouts Corner site which is in a WRPA. The Board voted to deny the requested variance, refusing to consider the application under a hybrid use-area variance standard as Wawa suggested. This timely appeal followed.

### Facts

Wawa owns and operated a chain of convenience stores. One such store is located on the southeast corner of Hamburg Road and South DuPont Parkway (just north of the Delaware Route 1 overpass) which it has operated there for years. This location, termed the Tybouts Corner site, does not now sell gasoline products. At this same intersection there are, however, two other convenience stores owned by Wawa competitors, each selling gasoline products. The site is also within 300 feet of a public water supply well operated by Artesian Water Company.

UDC § 40.10.380

4. WELLHEAD PROTECTION AREAS (PUBLIC WATER SUPPLY WELLS)

A. Wellhead protection areas.

2. Type B and C wellhead areas shall be limited to twenty (20) percent impervious surface ration within three hundred (300) feet of the wellhead.

B. The resource protection area around a public water supply well which draws from a confined aquifer as interpreted by the Delaware Geological Survey (DGS), DNREC, or a State-registered professional geologist with approval by DGS and DNREC shall be one hundred and fifty (150) feet. The protection area around a well not interpreted as drawing from a confined aquifer may be reduced below three hundred (300) feet where an environmental impact assessment report is approved demonstrating that a minimum sixty (60) day time of travel from a potential contaminant to the public water supply well is maintained. In no case shall the protection area for unconfined aquifers be less than one hundred fifty (150) feet. The assessment reports shall be based on an on-site hydrogeologic study.

Wawa wishes to renovate its current convenience store at Tybouts Corner. The renovation would include the installation of underground petroleum storage tanks and gasoline dispensing facilities. The 7.55 acre parcel is located within three hundred (300) feet of a Type C wellhead area, which, under the UDC, is limited to twenty (20) percent impervious surface ration.[4] Wawa's proposal would pave over or cover about 40% of the site.

New Castle County revised its zoning and subdivisions codes, the UDC, effective December 31, 1997, prohibiting the storage of petroleum products in floodplains, floodways, riparian buffers and sinkholes but permitting storage in other water resource areas provided certain containment measures were met. Under the September 22, 1998, amendments, the UDC petroleum storage area prohibitions were expanded to include wellhead class A, class B, and class C, the Cockeysville Formation, re-

Notwithstanding any other provisions in Article 13 of the New Castle County Code, the minimum lot area required for a public water supply well and related facility drawing from a confined aquifer shall be one (1) acre; and, the minimum lot area required for a public water supply well and related facility drawing from an unconfined aquifer shall be two (2) acres. In the case where the minimum lot area cannot be met, because the public water supply well and related facility is proposed on an existing lot less than the minimum required, and where the total wellhead protection area required is not wholly owned by the public water utility, a conversation easement on one or more adjacent properties shall be necessary to satisfy the appropriate public water supply well minimum wellhead protection areas. The terms of the conservation easement shall prohibit any activity detrimental to the public water supply well. The owner of the public water supply well shall be responsible for monitoring the property pursuant to the terms of the easement.

(Amended September 22, 1998 by Ordinance 98–080; amended December 14, 1999 by Ordinance 99–075)

UDC § 40.10.383

charge areas, steep slopes, critical nature areas, and wetlands. Replacement of existing underground petroleum storage tanks in protected areas was allowed if such upgrades were required by the State of Delaware Department of Natural Resources and Environmental Control (DNREC). The December 14, 1999, UDC amendment further expanded the prohibition on petroleum storage tanks to include drainageways.[5]

As noted earlier, Wawa submitted a proposed Minor Land Development Plan to the County Department of Land Use. That Department found Wawa's Plan to be unacceptable. It raised a number of questions and objections; one, notably, related to the property's location in the water resource area. The Department said that because of the property's location in a WRPA, Wawa would have to seek approval from RPATAC and a variance from the Board of Adjustment.

Wawa went to RPATAC. Its recommendation against allowing Wawa to expand its store and sell gasoline states:

> WaWa, Inc. ("Applicant") seeks a recommendation from the Resource Protection Area Technical Advisory Committee ("RPATAC") that it is acceptable, from an environmental position, to exceed the 20% inpervious cover limitation imposed within a Water Resource Protection Area ("WRPA"), by Division 10.380 of the United Development Code ("UDC") in order to develop the site with 42%

impervious cover; and to site and dispense fuel in a WRPA (otherwise prohibited by Division 10.600 of the UDC).

\* \* \* \*

In support of its application, WaWa, Inc. retained the services of Duffield Associates, a consultant in the geosciences. Duffield Associates submitted an environmental impact assessment report to this Committee, and additional testimony was provided by the consultant, Wendie Stabler, attorney for applicant and the applicant. *Applicant testified as to the lack of available sites at intersections within the County that are not constrained by zoning or WRPA issues.* (Emphasis added).

\* \* \* \*

In support of lifting the restriction, applicable on this property, that prohibits locating fuel tanks within the WRPA, applicant explained that many gasoline stations currently exist within WRPAs. Applicants facts show that 37 or 12% of gas stations in New Castle County are in WRPAs.

\* \* \* \*

The committee asked the age of the 37 sites within WRPAs and the consensus answer was that most if not all had been remodeled and underground tanks upgraded in the past 10–12 years. The Committee recognized that this proposal, if approved, would be the first new stations since the adoption of the ordinance prohibiting sitting and dispensing

---

5. STORAGE OF HAZARDOUS SUBSTANCES AND PETROLEUM PRODUCTS

The storage, maintenance, use, or sale of substance listed in 40 CFR 116 in an aggregate quantity equal to or greater than a reportable quantity as defined in 40 CFR 117 shall be governed by the following provisions. Petroleum products shall also meet the requirements of this section.

A. All such activities are prohibited in floodplains, floodways, wellhead class A, B, or

C, the Cockeysville Formation, drainageway, recharge areas, steep slopes, critical natural areas, wetlands, riparian buffers and sinkholes, unless such substances are used in the process of public water supply and treatment and sewer treatment facilities.

(Amended September 22, 1998 by Ordinance 98–080; amended December 14, 1999 by Ordinance 99–075)

UDC § 40.10.600

fuel within the WRPA. Furthermore, a member of the Committee stated that, despite the extraordinary precautions proposed by applicant, the only fail safe scenario was not permitting the use within the WRPA. The fact was brought out that this was a Wellhead Protection Area, not a Recharge Protection Area, and the threat to a public water supply was real. Members of the Committee explained that there was a history of losing well fields to petroleum contamination in New Castle County and that it was intentional that they were prohibited from WRPAs and that no engineering option to mitigate the potential threat was provided in the UDC.

\* \* \* \*

In the final analysis, the Committee acknowledged the thoroughness of the application and the extraordinary measures proposed to prevent, detect and contain leaks. It is the position of this Committee that an application .of this nature best be addressed as a text amendment through the public code amendment process. The votes are summarized below.[6]

The next step for Wawa was the Board of Adjustment. The Board's April 20, 2004, decision says Wawa sought a use variance and that the Board was employing the unnecessary hardship test in its consideration of Wawa's application.

The Board noted that a gasoline station is allowed in the zoning district in which Wawa's Tybouts Corner property is located. But because of the UDC and the property's location in the WRPA, storage and sale of petroleum products are prohibited. The Board further noted that Wawa conceded its current convenience store makes a reasonable profit.

In its decision of April 20, 2004, the Board acknowledged the existence of other gasoline stations at the same intersection, albeit, however, non-conforming uses. It noted also that Wawa suggested its application "did not fall neatly into either the area or use variance categories."[7]

The Board commented that representatives of the Artesian Water Company opposed Wawa's application.

The Board denied Wawa's application for a variance saying:

The requested relief is contrary to the public interest in safeguarding the water supply. The spirit of the zoning code would not be observed by granting the variance. The UDC does not provide an exception for gas stations with extraordinary safety measures in preventing discharge into the ground, only a blanket prohibition for new proposals. The intent of the Code to prevent further incursions into Water Resource Protection Areas would be thwarted by the request. While the UDC specifically permits nonconformities, it restricts further investments that would tent to make a nonconforming situation more permanent. UDC Division 40.08.000. Although the applicant believes that substantial justice requires the Board to allow the proposed use, since a number of other WRPAs are encumbered by nonconforming gas stations, the Board disagrees.

In addition to these criteria, the applicant must establish that a special condition or exceptional situation exists that result in an unnecessary hardship for the owner. The applicant did not argue that all permitted uses for the land were economically unfeasible, given the exist-

---

6. RPATAC report dated April 16, 2003.

7. Board of Adjustment decision at p. 2. April 20, 2004.

ing franchise on the site. The applicant could not argue that the need for the variance was due to a unique circumstance and not a general condition in the neighborhood. In fact, the applicant pointed to a neighboring gas station in the WRPA as a reason why the practice should be allowed on the subject property. The gas station would not alter the character of the locality, but meeting this one element is insufficient to pass the test.[8]

The appeal to this Court followed.

### Parties' Claims

Wawa claims that the Board erred in considering its application for a variance under the use variance standard of "unnecessary hardship" rather than under the area variance standard of "exceptional practical difficulty," or some hybrid standard. It contends that the Board never reached the merits of its case to establish that its proposed underground storage tank system would be at least as protective of the environment, if not more so, than underground storage systems already in place at the competing service stations at the Tybouts Corner location.

The Board responds that the "unnecessary hardship" standard is the appropriate standard contending Wawa requested a use variance and not an area variance or possibly a hybrid standard of the two standards. It adds that there is substantial

evidence to support the denial of the variance.

### Standard of Review

■ This Court, on an appeal from the Board, is to determine whether its decision is supported by substantial evidence and conclusions of law are devoid of errors.[9] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the Board's conclusion.[10] The Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[11] It merely determines if the evidence is legally adequate to support the agency's factual findings.[12]

### Discussion

### A

■ A variance application seeks permission to use property in a manner otherwise forbidden or restricted by applicable zoning regulations or laws.[13] Relief can be classified as either use variance or area variance.[14] An area variance is the relaxation of incidental limitations to a permitted use.[15] Generally, it allows deviations from zoning restrictions relating to the use of the property itself, such as the height, size or extent of lot coverage, size of the buildings, placement of the building on the site or other restrictions relating to the

8. *Id.*

9. *Janaman v. New Castle Cty. Bd. of Adjustment,* 364 A.2d 1241, 1242 (Del.Super.1976).

10. *Olney v. Cooch,* 425 A.2d 610, 614 (Del. 1981).

11. *Johnson v. Chrysler Corporation,* 213 A.2d 64, 66–67 (Del.1965).

12. *Floudiotis v. State,* 726 A.2d 1196, 1202 (Del.1999).

13. *Board of Adjustment of New Castle County v. Kwik–Check Realty, Inc.,* 389 A.2d 1289 (Del.Supr.1978) (*"Kwik Check II"*), aff'g 369 A.2d 694 (1977)(*"Kwik–Check I"*).

14. *Council of Civil Organizations of Brandywine Hundred v. New Castle County Board of Adjustment,* 1995 WL 717202 (Del.Super.), at *5.

15. *Matthew v. Smith,* 707 S.W.2d 411, 416 (Mo.1986).

physical characteristics of the site.[16] A use variance permits, however, a particular piece of property to be used in a manner otherwise prohibited by applicable law or zoning regulation.[17] A use variance is subjected to the "unnecessary hardship" test, while an area variance is subjected to the less burdensome "exceptional practical difficulty" test.[18] Before a variance can be granted, the Board must find either an unnecessary hardship or exceptional practical difficulties or both.[19]

■ The elements of the use variance standard of "unnecessary hardship" one: (1) the land cannot yield a reasonable return if used only for the permissible use, (2) the need for the variance is due to unique circumstances and not general conditions in the neighborhood which reflect unreasonableness of the zoning itself, and (3) the use sought will not alter the essential character of the locality.[20]

■ The test for area variances, "exceptional practical difficulty," is less burdensome than the test for a use variance.[21] It has these elements: (1) the nature of the zone in which the property is located, (2) the character of the immediate vicinity, (3) the uses in that vicinity, (4) whether, if the restrictions were removed, would there be a serious affect on neighborhood property and uses, and (5) if the restriction(s) were not removed, would there be a hardship on the owner to make normal improvements allowed for the use permitted in the zoning regulations for that property?[22]

### B

■ The UDC sets forth conditions under which the Board is to hear and decide applications for variances.[23] A variance may be granted where a denial will result in unnecessary hardship or exceptional practical difficulties to the owner of the property.[24] In addition, a variance

16. *Kwik–Check II*, 389 A.2d at 1291.

17. *Matthew*, 707 S.W.2d at 420 (citing A. Rathkopf, 3 The Law of Zoning and Planning § 38.01 (1979)).

18. *Council*, 1995 WL 717202, at *11.

19. *Council*, 1995 WL 717202, at *11 (citing *Kwik–Check II*, 389 A.2d at 1291).

20. *Baker v. Connell*, 488 A.2d 1303, 1307 (Del. 1989).

21. *Kwik–Check II*, 389 A.2d at 1291.

22. *Kwik–Check Realty, Inc. v. Board of Adjustment of New Castle Co.*, 369 A.2d 694, 698 (Del.Super.1977); aff'd *Board of Adjustment of New Castle Co. v. Kwik–Check Realty, Inc.*, 389 A.2d 1289 (Del.1978).

23. A. The Board of Adjustment shall hear and decide applications for a variance from the provisions of any zoning code or regulation if all of the following are satisfied:

1. The variance sought will not be contrary to the public interest.

2. Owing to special conditions or exceptional situation, a literal interpretation of the provisions of any zoning code or regulation at issue will result in unnecessary hardship or exceptional practical difficulties to the owner of the property.

3. If the variance were granted, the spirit of the zoning code or regulation provision at issue shall be fully observed and substantial justice done.

4. Such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning code, regulation or map.

B. All case law that has developed, and continues to develop, interpreting 9 *Del. C.* §§ 1352 shall be adhered to by the Board of Adjustment

UDC § 40.31.451

24. (a) The Board of Adjustment shall be empowered to hear and decide:

(3) In specific cases, such variance from any zoning ordinance, code or regulation that will not be contrary to the public interest, where, owing to special conditions or excep-

may be granted unless it would result in substantial detriment to the public good or is contrary to the intent and purpose of the UDC.[25] The power to grant variances should be used sparingly and reserved for exceptional circumstances.[26]

## C

■ On appeal, the Board first asserts that Wawa requested a use variance when it filed its request. The Court has reviewed the copy of the application form completed by Wawa. On page a–2 of the form, Wawa, indeed, checked the Use Variance box. This box is to be checked when the applicant wanted "to use property for use other than that allowed by its zoning classification...." There is, however, no box *titled* Area Variance. The box that comes closest is titled Dimensional Variance. When checking this box, the applicant is to "State size of variance being requested (example: variance from the required 6 foot side yard setback to construct [maintain] a dwelling 4.2 feet from the northerly property line)." As Wawa was not requesting a variance in the dimensions of the property, this box was not applicable to its request. The other boxes to be checked, Special Use, Appeal from an Administrative Decision, Confirmation of a Non Conforming Use and Beneficial Use Appeal, were not applicable to the site in question. The Court does not find that Wawa's checking of the Use Variance box

determinative as to whether Wawa requested a use variance or an area variance as there was no other applicable box.[27]

■ The Board further contends that Wawa's counsel "grudgingly" conceded that a use variance was appropriate. Wawa's counsel at the March 11, 2004 hearing stated:

We are here tonight on an application ah it's use variance. I suppose although I don't think the standard is technically applicable because it is a use permitted within the zoning district.[28]

The Court does not find that counsel's use of the term "use variance" indicated that Wawa applied for a use variance rather than an area variance, or that it is now prohibited from arguing on appeal that a hybrid standard should have been employed. The Board's very decision mentioned that Wawa contended its application did not fall "neatly" into either a use or area variance and that a hybrid standard should be applied.

The Board's decision, contrary to other arguments it now makes on appeal reveals several problems. One, there are errors of law. Two, its decision employs without saying so, a hybrid standard in denying Wawa's application.

As to the errors of law, the Board argues on appeal:

[a]ny nonconforming gas station in a WRPA will face restrictions on altera-

tional situations, a literal interpretation of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation, or map.
  9 *Del. C.* § 1313

**25.** *Janaman,* 364 A.2d at 1243.

**26.** *Matthew,* 707 S.W.2d at 413.

**27.** The Court recommends that the Board of Adjustment Application for a Public Hearing form and any other applicable form be changed to include provision for an area variance request.

**28.** Tr. Wawa, NCCBOA Hearing No. 03–454–A, at 2.

tion, extension and enlargement, as well as a loss of the nonconforming use if it discontinues for a six month period. UDC §§ 40.08.120, 130. The grant of a variance, however, would allow a gas station to exist on the subject property in perpetuity, regardless of ownership.[29]

This argument appears to mirror a statement in the Board's decision, "While the UDC specifically permits nonconformities, it restricts further investments that would tend to make a nonconforming situation more permanent." [30]

This is not a reason for the Board to deny the requested variance. The Board, being able to place conditions and restrictions on any variance it grants, could put reasonable conditions and restrictions on the Tybouts Corner site that would cause it to be treated in the same manner as the other convenience store sites in the area.[31] The granting of the variance could easily be limited so that it would not exist in perpetuity, regardless of ownership.

The Board went too far in its rejection by saying "The requested relief is contrary to the public interest in safeguarding the water supply." [32] The use variance tests do not include "public interest," though they may need to.[33] The Board overstepped its limited policy making role by saying this. Its overall policy is to enforce zoning rules and regulations as established by elected officials. But, of course, when it grants a use variance, it is making a very finite change in that broader zoning policy. This sentence from the Board's decision exceeds that limited role.

The sentence is also ironic because, in reviewing Wawa's proposal, RPATAC said, "It is the position of this Committee that an application of this nature best be addressed as a text amendment through the public code amendment process." [34] That would be the UDC, County Council and the County Executive but not the Board.

The Board's pronouncement reveals that it, in fact, utilized a hybrid approach in rejecting Wawa's application. What it said borders on the "character of the immediate vicinity and affect on neighboring properties" tests employed as part of judging an application for an area variance. The character of the vicinity and "neighboring" properties, however, in this case are all underground.

The surface zoning designation for the property on which Wawa's convenience store is located permits a gasoline station to be operated. But it is the subsurface water resource location which, without a variance, would prohibit such a use. Wawa's application, while mainly a use variance, is not easily pigeonholed into solely a use or an area variance as those

29. Respondent New Castle County Board of Adjustment's Answering Brief, at 12–13.

30. Board decision at 2.

31. CONDITIONS AND RESTRICTIONS ON VARIANCES

In approving an application for a variance, the body may impose additional restrictions and conditions on such approval. Restrictions and conditions may limit the use of the property, the standards for locating the use, standards for mitigating the impact on adjoining property owners, or standards to protect the health, safety, and general welfare of the

community. The Board of Adjustment written decision shall list all such conditions, restrictions, and/or limitations associated with their approval.

(Amended September 22, 1998 by Ordinance 98–062; amended July 13, 2004 by Ordinance 04–059).

UDC § 40.31.453.

32. Id.

33. See discussion infra p. 837–38.

34. RPATAC decision dated April 16, 2003 at 4.

terms and tests have been traditionally used and applied. Perhaps, unwittingly, by creating this hybrid zoning classification, the UDC has blurred the traditional lines between a use variance and an area variance.

The increasing complexity of zoning, primarily and traditionally aimed at surface land use, coupled with more recent heightened concerns about environmental matters, such as here with water resources, and soon with flood prevention and maybe air pollution, demands new tests. The meaning of public policy continues to evolve and becomes inclusive of more factors such as protection of water resources, flood prevention, and air quality.

As the record in this case shows, this is the first case of this kind. Wawa argued before RPATAC and the Board that there were other gasoline stations in WRPAs in other areas of the county. What is not clear from the record, however, is whether, as the Board thought, the stations in those areas are non-conforming uses such as the two stations across the road from Wawa's site. The breadth of the interrelationship between surface use and regulated subsurface reflected in this record also highlights the need to employ other or additional tests and not be straight-jacketed by "surface only" tests.

### E

■■■ Wawa, as the party seeking to over turn the Board's decision, bears the burden of persuasion to show that the Board's decision was unreasonable and ar-

bitrary.[35] In meeting the burden of showing unnecessary hardship, it must appear:

(1) That the property cannot yield a reasonable return when used for a permitted use; (2) that the plight of the owner is due to unique circumstances; and (3) that the use authorized will not alter the essential character of the locality.[36]

Economic hardship alone is not, in and of itself, sufficient to justify the granting of a variance.[37] The fact that the site could be put to a more profitable use does not establish unnecessary hardship when less profitable alternatives are available within the zoning classification.[38] Before a use variance can be granted, Wawa must also show, by monetary proof, that all uses permitted of the land under existing zoning are economically unfeasible.[39]

Wawa did show that its plight was due to unique circumstances. Those would be its location in this WRPA site. That is the same WRPA where the two gasoline stations across the street are located. But they are non-conforming uses "grandfathered" by the UDC.

■■■ The key element of the use variance unnecessary hardship test is that the proposed use will not alter the essential character of the locality. The UDC, however, now mixes the traditional zoning approach of trying to keep compatible surface uses with a newer concern for subsurface circumstances. Utilizing the character of the locality approach in its traditional way strongly suggests that regulatory agencies and the reviewing courts may need to expand their horizons

35. *Mellow v. Board of Adjustment of New Castle County,* 565 A.2d 947, 955 (Del.Super.1988).

36. *Kwik–Check II,* 389 A.2d at 1291.

37. *Homan v. Lynch,* 147 A.2d 650, 654 (Del.Super.1959).

38. Rathkopf's *The Law of Zoning and Planning* § 58:5 (4th ed.).

39. *Baker v. Connell,* 488 A.2d 1303, 1307 (Del. Supr.1985) (citing 8 McQuillen § 25.167).

of what it means in a mixed regulatory situation, as here, and how it is to be applied and reviewed.

This case shows why. With two gasoline stations already at the same intersection, which have been there for years, Wawa's service station would not alter the "essential character" of the surface area of the intersection of Hamburg Road and U.S. 13/DuPont Highway (Tybouts Corner).

There is even an arguable basis that adding a service station to this WRPA would not alter its "character". That is because of the two existing stations, either one or both of which presently create the same risk to the water resource as Wawa's service station would. The Board and RPATAC even observed that Wawa's station would represent less of such a risk due to the extraordinary safety precautions Wawa designed into its proposal; a level of protection likely greater than existing at either of the other two stations. But their presence is allowed under UDC grandfathering provisions. This undercuts Wawa's argument.

The danger to this, particular WRPA by Wawa's proposal, however, is probably not immediate. It would be unlike allowing a gasoline station to be built in the middle of a suburban development. In that situation the obvious and immediate incompatibility is palpable as is the alteration of the essential character of the community. The "character" of the WRPA in this area would not be altered until and unless there was a leakage by Wawa's gasoline operations into the WRPA. The Board, therefore, expanded the character test without express acknowledgment but did so because of the UDC's regulatory mixture of surface and subsurface conditions and which, in turn, injected the factor of "risk" into "character."

■■■ While the Board does not enjoy unlimited discretion,[40] the amendment to the UDC, which for the first time prohibits Wawa's proposal (or anything like it), is very recent. The record here shows that (1) the proposed usage is new, to the subsurface, i.e., not non-conforming and (2) when the Board, in part predicated on RPATAC's decision, chose to protect this water resource, it had to draw a line. Based on the record and the Board's decision, the Court cannot say the decision was unreasonable or arbitrary.

Wawa also admits it is not able to meet another part of the unnecessary hardship test as it can not to prove all uses of the economically zoned property are economically unfeasible. It has successfully operated a convenience store without gasoline pumps on the site for many years.[41] The Board, based on that undisputed record, was correct in denying Wawa a variance to install gasoline pumps under the unnecessary hardship standard for a use variance as the most applicable of the two variance standards.

### F

Wawa argues that it requested an area variance, not a use variance. As the facts before the Court do not exactly fit the description of a use variance, as discussed above, the Court will discuss the exceptional practical difficulties standard applied to applications for use variances.

■■■ For an area variance to be considered, the land must burdened, not the landowner personally.[42] The land is burdened in the case before the Court.

---

**40.** *Janaman,* 364 A.2d at 1242–1243.

**41.** Opening Brief of Petition Wawa, Inc., at 7.

**42.** 3 Rathkopf's *The Law of Zoning and Planning* § 58:18 (4th ed.).

■ When reviewing an area variance request, the Board must look to "whether a literal interpretation of the zoning law results in exceptional practical difficulties of ownership."[43] In addition, the Board is to consider:

The nature of the zone in which the property lies, the character of the immediate vicinity and the uses contained therein, whether, if the restriction upon the applicant's property were removed, such removal would seriously affect such neighboring property and uses; and whether, if the restriction is not removed, the restriction would create unnecessary hardship or exceptional practical difficulty for the owner in relation to his efforts to make normal improvements on the character of that use of the property which is a permitted use under the use provisions of the ordinance.[44]

In its April 20, 2004 decision, the Board focused its attention on the WRPA and possible effects a leaking gasoline storage tank might have on the water wells. It did not consider the other convenience stores in the immediate area, the character of the area other than the wellheads, and the practical difficulty Wawa would meet in its attempt to make normal improvements to its site.

■ "Economic benefit and/or hardship may constitute exceptional practical difficulty for purposes of an area variance where the change sought is 'minimal' "[45] The local zoning, Commercial Regional zoning district,[46] permits convenience stores at Tybouts Corner. In addition to the Wawa store, there are two other convenience stores, both with gasoline pumps, in close proximity to the Wawa site. In the current marketplace, many convenience stores provide pumping facilities for their customers. Wawa's proposal will not change the character of the district. The change sought by Wawa is minimal.

■ A legitimate exceptional practical difficulty may exist and the granting of a variance may be justified when there is the inability to improve one's business, or to stay competitive as a result of area limitations.[47] The limitation at this site, the UDC prohibition against petroleum storage tanks in a Type C wellhead area, deals only with the physical characteristics of the site. This prohibition restricts Wawa's ability to improve its business and compete on an equal footing with two other area convenience stores.[48] As there are at least two petroleum storage facilities in the immediate area, the character of the zoned district would not be changed by the proscribed use if the variance were granted.[49] There is the question of whether the addition of petroleum storage tanks would change the subsurface of the area. The tanks would not necessarily change the nature of the area's wells. There is the possibility that they could, but not necessarily would, do so if one or more of the storage tanks sprung a leak.

The existing convenience stores with gasoline pumps are not required to close.[50]

43. *Kwik–Check I*, 369 A.2d at 698.

44. *Kwik–Check II*, 389 A.2d at 1291.

45. *Council*, 1995 WL 717202, at *11.

46. *Wawa v. New Castle County Board of Adjustment*, Dept of Land Use Application 03–0454–A (April 20, 2004).

47. *Kwik–Check II*, 389 A.2d at 1291.

48. The two convenience stores in question that store petroleum products are permitted to remain open as nonconforming situations that are permitted to continue as the same nonconforming situations. UDC § 40.08.020.

49. *Kwik-Check II*, 389 A.2d at 1291.

50. UDC 40.80.020. Continuance permitted.

These stores may replace the storage tanks only if all State and Federal regulations are met.[51] Wawa wants to be treated as if it already had underground storage tanks in place. Wawa's request for a variance is not to change from one nonconforming use to another but from a conforming use to a nonconforming use. The proposed nonconforming use was not in existence at the time the UDC took effect even though the Wawa convenience store was open to the public.[52]

## G

The purpose of the UDC is to specify the circumstances and conditions under which nonconforming land use is allowed to continue while restricting additional investments which would make the nonconforming use more permanent.[53] The purpose of the UDC is to contain nonconforming uses by encouraging appropriate groupings of compatible and related uses and to restrict further investments that would tend to make nonconforming situations more permanent.[54] "The perpetuation of noncompliance would substantially derogate the intent and purpose of the zoning ordinance in question."[55] Article 8 permits nonconforming situation resulting from the adoption of the UDC to continue but "restricts further investments that would tend to make a nonconforming situation more permanent."[56] The current version of the UDC prohibits the storage of petroleum products in the certain areas in the state.[57] Tybouts Corner is one of the sites where such storage is prohibited.

▆▆▆▆ The provisions in an ordinance for limiting nonconforming uses should be liberally construed.[58] The protection of the public water supply, as embodied in the UDC, is a valid public interest.[59] It is not enough that the public will realize a benefit, or avoid a detriment, if the vari-

51. B. The replacement of existing underground petroleum storage tanks in a Water Resource Protection area (WRPA) where an upgrade is required by DNREC shall be permitted provided all State and Federal regulations are met and secondary containment is provided.

(Amended September 22, 1998, by Ordinance 98–080; amended December 14, 1999, by Ordinance 99–075).
UDC § 40.10.600.

52. *Mellow*, 565 A.2d at 955 (citing *Amico v. New Castle County*, 571 F.Supp. 160, 170 (D.Del.1983)).

53. A. It is the purpose of this Article to establish standards, procedures, and minimum requirements, consistent with the Comprehensive Development Plan, which regulate and control the planning and subdivision of lands; the use, bulk, design, and location of the land and buildings; the creation and administration of zoning districts; and the general development of real estate in the unincorporated areas of New Castle County, Delaware.

B. The zoning regulations established by this Chapter control the future use of land by encouraging appropriate groupings of compatible and related uses. The regulations of this Article permit nonconforming situations that result from the adoption of this Chapter to continue under certain circumstances. While this Article permits non-conformities, it restricts further investments which would tend to make a nonconforming situation more permanent.
UDC § 40.08.000 Purpose.

54. UDC § 40.08.000.

55. *Janaman*, 364 A.2d at 1243 (1976).

56. UDC § 40.08.000.B.

57. UDC § 40.10.600.

58. *New Castle County v. Harvey*, 315 A.2d 616, 618 (Del.Ch.1974).

59. *ACW Realty Management, Inc. v. Planning Board of Westfield*, 40 Mass.App.Ct. 242, 662 N.E.2d 1051, 1055 (1996).

ance is granted.[60] The Court holds that the use variance test of unnecessary hardship is the appropriate standard, even though not a neat fit, to be applied for a variance from the provisions of the petroleum storage provisions of the UDC.[61] It seems to the Court that Wawa's sole reason for seeking the variance is to place it in a better competitive position with the two near-by convenience stores that offer gasoline pumps and thereby increase profits at the Tybouts Corner site. Economic competition may be a valid concern for an area variance.[62]

■ The addition of gasoline pumps would not change the character of the area and Wawa would perhaps suffer in its inability to improve its business. There is no information that the installation of the pumps would result in substantial damage to the public good. However, the fact that there might be substantial damage to the public good and the installation of the petroleum storage tanks would be contrary to the intent and purpose of the UDC, requires the finding that the granting of an area variance is inappropriate in the circumstances before the Court.

### Conclusion

The Court finds that the Board's decision was not arbitrary nor unreasonable, and that it was supported by legally substantial evidence. Accordingly, the decision of the Board of Adjustment of New Castle County is AFFIRMED.

IT IS SO ORDERED.

---

**60.** *Application of Emmett S. Hickman Co.*, 108 A.2d 667 (Del.Supr.1954).

**61.** *Jenney v. Durham*, 707 A.2d 752, 757 (Del. Supr.1997).

**62.** *Baldini Enterprises v. New Castle County Board of Adjustment*, Del.Super., C.A. No. 95A–09–018, 1996 WL 527227 (July 17, 1996), Herlihy, J.