# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STEPHANI BALLARD WAGNER;       )
JAMES AND LINDA FRIEDRICHSEN; )
CARL GOLDSTEIN & JUDITH ANNE  )
HOUGH-GOLDSTEIN;               )
JOHN AND CELIA HUBER; and      )
JAMES RENE KANICKY & ELKE      )       C.A. No. N19A-09-003 CEB
ANJA MICHALAK.                 )
                               )
       Petitioners,          )
                               )
    v.                     )
                               )
J & B CONTRACTORS, LLC.; NEW   )
CASTLE COUNTY, Department of    )
Land Use; and NEW CASTLE        )
COUNTY BOARD OF ADJUSTMENT, )
                               )
       Respondents.          )

Submitted: July 19, 2021
Decided: August 27, 2021

## MEMORANDUM OPINION

*Upon Consideration of Petitioners' Appeal of the Decision of the
New Castle County Board of Adjustment,* **AFFIRMED.**

Stephani J. Ballard, Esquire, LAW OFFICES OF STEPHANI J. BALLARD, LLC,
Wilmington, Delaware. *Attorney for Petitioners.*

John E. Tracey, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, Delaware. *Attorney for Respondent, J & B Contractors, LLC.*

**BUTLER, R.J.**

This matter comes to the Court after Petitioner Stephanie Ballard Wagner and others ("Petitioners") unsuccessfully opposed the subdivision of a property before the New Castle County Board of Adjustment ("Board").

## FACTUAL AND PROCEDURAL BACKGROUND

The property in dispute is a 1.48-acre, single-family residential lot at 898 Sharpless Road in Hockessin, Delaware (hereinafter, the "Property"). The Property is zoned NC21 under New Castle County's Unified Development Code ("UDC"), requiring a minimum 0.50-acre lot size. It sits on a private drive with ten other single-family lots that range in lot size from 0.51 acres to nearly 3.0 acres.

J & B Contractors, LLC ("Respondent") purchased the Property on October 9, 2018 intending to subdivide the parcel into two lots of 0.582 and 0.743 acres and to construct a single-family home on each lot. Respondent demolished the existing house and submitted an exploratory plan to the New Castle County Department of Land Use ("Department") to subdivide the property.

The Department noted the Property's presence in the Cockeysville Formation Drainage Area ("CFDA"). The CFDA is a large water table in northwestern New Castle County; development within the CFDA triggers additional requirements under the UDC intended to preserve the county's water resources.

The Department also noted that a zoning variance would be required before subdividing could proceed. Respondent revised the plan to meet the Department's

1

concerns. As revised, the Department found the new plan "conditionally acceptable," subject to securing a zoning variance from the Board.

One of the unusual features of the UDC as it relates to land in the CFDA is that "disturbances" to the land may not exceed fifty percent of the total lot area, preserving the remainder of the land as open space.[1] The UDC further provides that the lot area must be calculated by excluding the preserved space from the total lot area.[2] Because fifty percent of the lot area must be preserved from disturbance and may not be included in the total lot area, a half-acre lot becomes a quarter-acre piece of land that can be "disturbed" by development.

Land zoned in NC21, such as the subject property, has a minimum lot size of a half-acre. While each of these lots exceeded half an acre, the open space required by the CFDA may not be considered when calculating the lot size and therefore the lots were smaller than the minimum size called for in zone NC21.

Respondent filed an application with the Board seeking area variances to provide a disturbance area of 1) 0.10 acres exclusive of protected resources for Lot 1, and 2) 0.22 acres exclusive of protective resources for Lot 2. The Department issued its Recommendation to the Board that supported the approval of the requested variances.

---

[1] UDC Table 40.10.010.
[2] UDC § 40.04.110.D.

After notice was issued, the Board held a hearing on May 23, 2019. The Board voted unanimously to grant the two variances. In doing so, the Board rejected the opponents' argument that this was a "use variance" and determined that the appropriate standard to review the application was an area variance standard. In response to the Board's ruling, Petitioners filed an appeal with this Court seeking reversal of the decision.

## STANDARD OF REVIEW

The Court's review of a Board of Adjustment decision is limited to a determination whether the findings and conclusions are supported by substantial evidence and free from legal error.[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] The Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[5] The Court must give deference to the experience and specialized competence of the Board.[6]

---

[3] *Janaman v. New Castle Cty. Bd. of Adjustment*, 364 A.2d 1241, 1242 (Del. 1976).
[4] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981).
[5] *Wawa, Inc. v. New Castle Cty. Bd. of Adjustment*, 929 A.2d 822, 830 (Del. Super. 2005).
[6] *Dempsey v. New Castle Cty. Bd. of Adjustment*, 2002 WL 568126, at *4 (Del. Super. Ct. Apr. 17, 2002).

## ANALYSIS

Petitioners raise three issues on appeal: 1) the Board erred when using the legal standard for an "area" variance instead of the more stringent standard for a "use" variance, 2) there was no substantial evidence showing the UDC lot size restrictions would create "exceptional practical difficulty," and 3) Respondent failed to provide adequate public notice of the substance of the proposal at issue.

### 1. The Variance in Question is an Area Variance.

A use variance permits a property to be used "in a manner otherwise prohibited by applicable law or zoning regulation."[7]  It changes the character of the zoned district by permitting an otherwise proscribed use, such as a commercial use in a residential district.

Obtaining a "use variance" is deliberately more onerous than an area variance, as it constitutes an alteration of the uses to which the land in the adjoining area is put. Use variances are subject to the "unnecessary hardship" test.[8]  Proof of an unnecessary hardship requires a showing that 1) the land cannot yield a reasonable return if used only for the permissible use, 2) the need for the variance is due to

---

[7] *Wawa, Inc.*, 929 A.2d at 831.
[8] *Bd. of Adjustment of New Castle Cty. v. Kwik-Check Realty, Inc.*, 389 A.2d 1289, 1291 (Del. 1978).

4

unique circumstances and not general conditions in the neighborhood, and 3) the use sought will not alter the essential character of the locality.[9]

Area variances, on the other hand, generally allow deviations from zoning restrictions on physical characteristics of the planned improvement.[10] Area variances are subject to the less burdensome "exceptional practical difficulty" test.[11] An exceptional practical difficulty considers 1) the nature and zone in which the property is located, 2) the character of the immediate vicinity, 3) the uses in that vicinity, 4) if the restrictions were removed, whether there would be a serious effect on neighborhood property and uses, and 5) if the restrictions were not removed, whether there would be a hardship on the owner to make normal improvements allowed for the use permitted for that property.[12]

The difference between the two can be boiled down to this: a use variance fundamentally changes how the property is used. An area variance relaxes zoning or building limitations on the property but does not alter how it may be used. Here, Respondent's proposed subdivision will still use the property for single-family purposes, a use that is consistent with NC21. Thus, the Board correctly found that Respondent was seeking an area variance, not a use variance.

---

[9] *Wawa, Inc.*, 929 A.2d at 831.
[10] *See id.* at 830 (citing *Matthew v. Smith*, 707 S.W.2d 411, 416 (Mo. 1986)); *Kwik-Check Realty, Inc.*, 389 A.2d at 1291.
[11] *Wawa, Inc.*, 929 A.2d at 831.
[12] *Id.*

## 2. There Was Substantial Evidence That the UDC Lot Size Restriction Would Create "Exceptional Practical Difficulty."

Respondent requested the variance to deviate from the lot size requirement because under the UDC, the lots had to be calculated exclusive of protected resources. That is to say: the lots will both exceed the 0.5-acre minimum required by the UDC; the only variance required was relaxation of the requirement that land within the protected resource not be counted in the total lot size.

Turning to the exceptional practical difficulty factors, the properties along Melson Way that adjoin the subject lots consist of an array of half-acre to three-acre lots. These lots are of equivalent size. As residences, they are consistent with the surrounding area. These homes, in short, would not differ substantially from other homes already in place on Melson Way.

Indeed, Petitioners do not take serious issue with the Board's findings. Rather, Petitioners argue that the environmental restrictions are mandatory and any lots of less than 0.5 acres (exclusive of the mandated open space) are prohibited in the NC21 zone located in the CFDA. In Petitioner's view, the half acre lot size mandated by the NC21 zone is actually a one-acre lot size in the CFDA due to the requirement that one half the lot be reserved for open space. And for Petitioner, there can be no exception, as the lot size and open space requirements are mandated by the UDC.

Petitioner's argument not only vitiates the plain language of the minimum lot size permitted for the NC21 zone, but Petitioner's argument that the Board has no

6

authority to grant an area variance is belied by the statutory scheme created by the General Assembly and the UDC.

9 *Del. C.* § 1313 expressly states that the Board is empowered to grant a variance from any zoning law "that will not be contrary to the public interest, where, owing to special conditions or exceptional situations, a literal interpretation of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done."[13] There is little doubt but that the Board had the authority to grant the variance notwithstanding the restrictions articulated in the UDC.

The purpose of the CFDA restriction on disturbances to the land is to preserve the ability of the CFDA to recharge naturally. The subdivision plan was consistent with that purpose, as more than half of the subdivided lots would be preserved as open space. Thus, there was substantial evidence supporting the Board's conclusion that the variance was required to avoid an exceptional practical difficulty.

### 3. The Notice Was Sufficient.

Petitioners' final argument regarding notice is unavailing. Under UDC § 40.31.340, the Department of Land Use is responsible for ensuring notice of public hearing via 1) notice in the newspaper, 2) mailed notice, and 3) posted notice with a

---

[13] 9 *Del. C.* § 1313(a)(3).

sign on the property. The record demonstrates that the Department posted in the newspaper, mailed notice to neighboring residents, and posted a sign on the property.

The Department, in its review of the exploratory plan, identified the lot size variances required to accommodate the proposed subdivision. Moreover, the application itself depicted the 1) lots to be created and 2) the lot area requested pursuant to the UDC. The notices were adequate under the UDC. Thus, the Board did not err in finding that the Department gave adequate public notice.

## CONCLUSION

For the foregoing reasons, the Board's decision is **AFFIRMED.**
**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

8