IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHANI BALLARD WAGNER; JAMES AND LINDA FRIEDRICHSEN; CARL GOLDSTEIN & JUDITH ANNE HOUGH-GOLDSTEIN; JOHN AND CELIA HUBER; and JAMES RENE KANICKY & ELKE ANJA MICHALAK, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 300, 2021<br><br>Court Below: Superior Court of the State of Delaware<br><br>C.A. No. N19A-09-003 |
| Petitioners Below, Appellants, | §<br>§<br>§ | |
| v. | §<br>§ | |
| J & B CONTRACTORS, LLC; NEW CASTLE COUNTY, Department of Land Use; and NEW CASTLE COUNTY BOARD OF ADJUSTMENT, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Respondents Below, Appellees. | §<br>§ | |

Submitted: April 20, 2022
Decided: June 15, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

**O R D E R**

On this 15th day of June 2022, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The Appellee, J & B Contractors, LLC ("J & B"), petitioned the New Castle County Board of Adjustment (the "Board") for variances that would allow it to divide a 1.48-acre parcel into two lots and build a single-family dwelling on each

lot. The minimum lot size for a single-family dwelling at the property's location is 0.5 acre. However, J & B could not count all of the 1.48 acres toward the minimum lot size for the two lots. The 1.48 acres first had to be reduced by 0.16 acre that lies within a Delaware Department of Transportation right-of-way for road purposes, leaving 1.32 acres for the two lots. J & B proposed to divide the remaining 1.32 acres into a 0.6-acre lot (Lot 1) and a 0.72-acre lot (Lot 2). A further reduction in the calculation of minimum lot size was required, however, because the property sits in a "Water Resource Protected Area" ("WRPA") known as the Cockeysville Formation Drainage Area (the "CFDA"). The CFDA is a large water table in northwestern New Castle County that drains to grounds underlain by the Cockeysville Formation. To preserve the County's water resources, development within the CFDA triggers several open space requirements: 1) any "disturbances" to land within the CFDA may not exceed 50% of the total lot area and 2) the amount of impervious coverage (the total horizontal area of all buildings and paved surfaces) is limited to 20%.[1] The New Castle County Unified Development Code (the "UDC") requires that lot area be calculated by excluding the preserved space from the total lot area.[2] When the CFDA requirements were factored into the calculation of minimum lot size, Lot 1 was left with a lot size of only 0.10 acre and Lot 2 was

---

[1] Opening Br. Ex. B at 2 [hereinafter Bd. of Adjustment Op.]; Opening Br. Ex. C at UDC § 40.01.100 [hereinafter UDC].
[2] UDC § 40.04.110(D).

2

left with 0.22 acre. As a result, J & B needed variances from the 0.5-acre minimum lot size requirement for each lot. After a hearing, the Board voted unanimously to approve the variances.

(2) The Appellants are neighboring or nearby property owners who have opposed J & B's request for variances. After the Board approved the variance requests, the Appellants filed a Petition for Review by Writ of Certiorari in the Superior Court. The Superior Court affirmed the Board's decision. On appeal to this Court, the Appellants make two claims. The first claim has a number of subparts. The Appellants first argue that the Board erred by failing to find that the variances were not "contrary to the public interest,"[3] a finding, they assert, that is required by the UDC. They also argue that the Board erred by failing to find that the variance requests were "owing to special conditions or exceptional situations,"[4] a finding they also assert is required by the UDC. They further argue that the Board erred by calculating lot area in an arbitrary manner, in gross derogation of the plain language of the UDC, for the sole purpose of approving the variance requests. Finally, as part of their first claim, they argue that the Board erred by considering the variance requests under the "exceptional practical difficulties" legal standard for

[3] Opening Br. at 13.
[4] *Id*. at 15.

3

"area" variances, rather than the more stringent standard of "unnecessary hardship" for "use" variances.[5]

(3)     As their second claim, the Appellant's argue that even if the area variance standard is the correct standard to apply to consideration of the requested variances, the Board erred by failing to make findings that the UDC created "exceptional practical difficulties" for J & B's use of the property.  They argue that the evidence would not support such a finding, if such a finding had been made.   For the reasons that follow, we have concluded that the Superior Court's judgment should be affirmed.

(4)     The property in dispute is at the intersection of Sharpless Road and Melson Way in Hockessin, Delaware.   At the Board's hearing on the variance requests, an issue was raised as to whether J & B was requesting area variances or use variances.   The Board concluded that J & B was requesting area variances because its proposed use of the premises was residential, which was a permitted use, and it was seeking only variances from dimensional requirements.   The Board accordingly rejected the Appellants' argument that the standard for a use variance applied.  In approving the variances, the Board noted the following factors:  each of the proposed lots, inclusive of the protected resources, was larger than the required minimum lot size in that residential zone and larger than the lots across Melson Way;

---

[5] *Id*. at 20-34.

each lot met the UDC's limitations on impervious cover and disturbance; there was no increased traffic burden on Melson Way; and denial of the variances would prevent J & B from making normal improvements to its lands.

(5) In the Superior Court, the Appellants raised three issues: 1) the Board erred when using the legal standard for an area variance instead of the standard for a use variance; 2) there was no substantial evidence showing the UDC lot size restrictions would create "exceptional practical difficulties;" and 3) the New Castle County Department of Land Use failed to provide adequate public notice of J & B's petition. The Superior Court rejected the Appellants' contentions and affirmed the Board's decision. The Appellants appeal the Superior Court's findings on the first two issues.

(6) "The common law writ of certiorari lies to review acts that are judicial or quasi-judicial in nature. The purpose of certiorari is 'to correct errors of law, to review proceedings not conducted according to law, and to refrain an excess of jurisdiction.'"[6] It is "the appropriate cause of action for determining whether"[7] the Board "exceeded its powers or failed to conform to the requirements of law."[8] This Court reviews the Superior Court's legal rulings *de novo*.[9] "We limit our review to

---

[6] *Dover Hist. Soc'y v. Dover Plan. Comm'n*, 838 A.2d 1103, 1106 (Del. 2003) (citations omitted).
[7] *Id.*
[8] *Id.*
[9] *CCS Invs., LLC v. Brown*, 977 A.2d 301, 319-20 (Del. 2009) (en banc).

correcting errors of law and determining whether substantial evidence exists to support the Board's findings of fact."[10]

(7)   Appellants' first arguments are that the Board erred as a matter of law by failing to find that the variances were not "contrary to the public interest;" by failing to find that the variance requests were "owing to special conditions or exceptional situations;" by calculating the lot areas in an arbitrary manner, in gross derogation of the plain language of the UDC, for the sole purpose of approving the variance requests; and by applying the standard for approving an area variance rather than the standard for a use variance.  Pursuant to 9 *Del. C.* § 1313(a), the Board is vested with the power to hear and decide:

> In specific cases, such variance from any zoning ordinance, code or regulation that will not be contrary to the public interest, where, owing to special conditions or exceptional situations, a literal interpretation of any zoning ordinance, code or regulation will result in unnecessary hardship or exceptional practical difficulties to the owner of property so that the spirit of the ordinance, code or regulation shall be observed and substantial justice done, provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of any zoning ordinance, code, regulation or map.

(8)   We first address the Appellants' argument that the Board did not make a determination as to whether the variances would "not be contrary to the public

---

[10] *Rehoboth Art League, Inc. v. Bd. of Adjustment*, 991 A.2d 1163, 1166 (Del. 2010).

6

interest," a consideration required by Section 1313(a). Because the variances would "circumvent"[11] environmental regulations, Appellants argue, public interest is implicated, and the Board had a duty to make specific findings as to how the variances would affect public interest. The record, however, shows that the approval of the variances would not be contrary to public interest, and the Board made findings to that end. These findings include that the proposed lots, inclusive of the preserved areas, have a bulk size larger than the size required by the zoning in that area and larger than the lots lying directly across Melson Way; each lot met the UDC's limitations on impervious cover and disturbance; there was no increased traffic burden on Melson Way; and the nonconformities would be visually imperceptible. The record also shows that the need for variances was owing to special conditions or exceptional situations; specifically, the combined effect of the minimum lot size and the requirements of the WRPA would prevent the property from division into developable lots "that otherwise comply with the U.D.C.'s environmental standards that protect WRPAs."[12]

(9)     Appellants next argue that the Board arbitrarily calculated the lot areas in "gross derogation"[13] of the UDC. In its decision, the Board wrote that the "Applicant plans to create two lots exceeding 0.5 acre inclusive of the protected

---

[11] Opening Br. at 15.
[12] Bd. of Adjustment Op. at 6.
[13] Opening Br. at 15.

7

resources, but the net size of the lots is reduced to 0.1 and 0.22 acre when the protected resources are excluded."[14] Appellants argue that the Board fashioned an arbitrary calculation of lot area out of whole cloth, essentially meeting the lot area and then "accommodate[ing]"[15] the protected resources—which is in derogation of the UDC's requirement that lot areas "must be met exclusive of protected resources."[16] Appellants argue that J & B incorrectly argued, and the Board incorrectly found, that J & B actually met the lot size requirements, and that the CFDA triggered *additional* requirements. The CFDA, Appellants contend, does not create additional requirements; rather, the incorporation of the protection levels is an integral part of all calculations, and the Board is required to calculate lot area after excluding the percentage of land required to be protected.

(10) We do not believe that the Appellants have made a convincing argument that the Board's lot calculation was arbitrary or contrary to the UDC. The UDC tracks both gross and net lot area.[17] When the protected resources are subtracted from the gross lot area, one arrives at what the UDC considers the net lot area.[18] UDC § 40.04.110A provides that in subdivisions of less than 5 lots, protected resource land is preserved by conservation easements. Thus, while protected

---

[14] Bd. of Adjustment Op. at 3.
[15] Opening Br. at 18.
[16] UDC § 40.04.110(D).
[17] *See* Answering Br. Ex. 1 at UDC Table 40.05.420.
[18] *Id.; see also* Bd. of Adjustment Op. at 3.

resources in a subdivision such as this one remain part of the physical lot and are maintained by the property owner, they are subtracted from the net lot area calculation. Therefore, the physical boundary of each lot in this case, inclusive of the protected land, remains as stated from the outset, 0.72 and 0.6 acre. When protected resources are subtracted from the gross lot area, one arrives at the what the UDC considers the net lot area, leading to a need for the variance. We find nothing in the manner in which the Board calculated the lot area that is arbitrary or contrary to the UDC.

(11) Appellants' next argument is that the Board erred by considering J & B's variance requests under the legal standard for area variances, rather than the more stringent standard for use variances. In *Board of Adjustment v. Kwik-Check Realty, Inc.*, this Court held that the language in 9 *Del. C.* § 1313(a) separates variances into two categories: "use" and "area," and that a less burdensome test of "exceptional practical difficulties" applies to area variances and that a more stringent "unnecessary hardship" standard applies to use variances.[19] A use variance, this Court explained, "changes the character of the zone district by permitting an otherwise proscribed use."[20] An area variance, on the other hand, "concerns only the practical difficulty in using the particular property for permitted use."[21]

---

[19] 389 A.2d 1289, 1291 (Del. 1978).
[20] *Id.*
[21] *Id.*

9

(12)   Appellants contend that the variances sought in this case "are the type of major deviations from the letter and spirit of the zoning code that could only be granted . . . by meeting the 'unnecessary hardship' criteria for what has been termed a 'use variance.'"[22]  To support their argument, Appellants first point to *Jenney v. Durham*.[23]  In *Jenney*, the applicant wished to build two homes on a 5-acre portion of land that included an erosion-prone "steep slope district" protected by the Steep Slope Ordinance.[24]  Under the Slope Ordinance, construction of a single-family home was prohibited in a steep sloped district.[25]  The proposed homes would have been "located in a prohibitive steep slope district," but "at least one home could be built on a level portion outside the prohibitive district."[26]  This Court affirmed the Superior Court's holding that a variance to allow two homes to be built on this land constituted a use variance because construction of a single-family home was a proscribed use of the steep sloped district.[27]  The Appellants argue that J & B's request for "drastic deviations"[28] from the UDC's requirements is akin to a rezoning, like the variance request in *Jenney*, and should be considered under the test for use variances.

---

[22] Opening Br. at 25.
[23] 707 A.2d 757 (Del. Super. 1997), *aff'd,* 696 A.2d 396 (Del. 1997).
[24] *Id*. at 753-54.
[25] *Id*.
[26] *Id*.
[27] *Id*. at 753.
[28] Opening Br. at 22.

(13)  Appellants also rely on *Wawa Inc. v. New Castle County Board of Adjustment*.[29]  In that case, Wawa sought to retrofit an existing convenience store—a permitted use for the land—by adding gasoline pumps and storage tanks.[30]  However, WRPA restrictions on the land prohibited storage and sale of petroleum products.[31]  This Court found that a variance to allow for the construction of a gas station on the property required the heightened use variance standard.[32]  Appellants argue that *Wawa* is similar to the case we have here—although the construction of single-family homes is a permitted use of the land in this case, additional environmental requirements have made the construction of two single-family homes a proscribed use of the land.

(14)  We find Appellants' reliance on these cases to be unpersuasive.  In both *Jenney* and *Wawa*, the Steep Slope Ordinance and the WRPA regulations established additional restrictions and unequivocally prohibited the sought-after uses of the land.  In *Jenney*, the ordinance prohibited the development of single-family homes on the prohibitive slope district, and in *Wawa*, the WRPA regulations restricted the storage and sale of petroleum.  In this case, no provision specifically proscribes the construction of two single-family homes.  As this Court noted in *Kwik-Check*, a

---

[29] 929 A.2d 822 (Del. Super. 2005).
[30] *Id*. at 825-26.
[31] *Id*. at 826.
[32] *Id*. at 827-38.

fundamental aspect of the analysis is whether the variance would change the character of the zoning district.[33] Here, building single-family homes is permitted within the zoning district, and the lot sizes inclusive of the protected area are in keeping with the surrounding lots. Only dimensional variances are requested. Therefore, the Board acted appropriately in applying the exceptional practical difficulties test.

(15) Finally, Appellants argue that even assuming *arguendo* that an area variance standard was appropriate, there was not substantial evidence in the record to meet the exceptional practical difficulties test. The test for an area variance considers the following: 1) the nature and zone in which the property is located; 2) the character of the immediate vicinity; 3) the uses in that vicinity; 4) if the restrictions were removed, whether there would be a serious effect on neighborhood property and uses; and 5) if the restrictions were not removed, whether there would be a hardship on the owner to make normal improvements in the use of the property that is permitted under the code.[34]

(16) Appellants contend that the application fails this test because the record is devoid of any evidence of "hardship"[35] to J & B. However, the Board did find evidence of exceptional practical difficulties. That evidence included that the

---

[33] 389 A.2d 1289, 1291 (Del. 1978).
[34] *Id.*
[35] Opening Br. at 38.

12

variances were in keeping with the nature and zone of the property, as the zoning designation was intended to protect the residential character of the existing neighborhood; the proposed buildings were in line with the character of the surrounding neighborhood because the lots, inclusive of the protected areas, are very similar in size to lots on the opposite side of Melson Way, which are also used for residential purposes; the requested variances would not have a serious adverse effect on the surrounding properties because the resulting "nonconformities"[36] would be visually imperceptible; and, if the variances were not granted, J & B "would be prohibited from the normal and reasonable subdivision of the Subject Property into developable, residential lots that otherwise comply with the U.D.C.'s environmental standards that protect WRPAs."[37]

(17) Appellants seem to argue that the Board cannot simply find that exceptional practical difficulties exist where the code prohibits certain actions; otherwise, every variance would be granted. However, the Board's decision was not made simply because the UDC's provision prevented the planned subdivision. The Board looked at the record as a whole and found that the proposed plan complied with all UDC requirements except the minimum lot size, was consistent with the surrounding community character, and was unlikely to create significant adverse

---

[36] Bd. of Adjustment Op. at 6.
[37] *Id*.

13

impacts on the neighboring properties. Without the variances, it would be impossible for J & B to make the "normal improvement" of subdivision of the land. We find that the there was sufficient evidence for the Board to make its finding that exceptional practical difficulties existed in this case.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

14